**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-50341
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES ARTHUR DAUGHENBAUGH,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

(March 27, 1995)

Before POLITZ, Chief Judge, KING and STEWART, Circuit Judges.

POLITZ, Chief Judge:

Charles Arthur Daughenbaugh appeals his conviction of mailing threatening communications in violation of 18 U.S.C. § 876 and his sentence of 240 months imprisonment. Finding no reversible error, we affirm.

Background

Between 1991 and 1993 Daughenbaugh, an inmate at the Clements Unit of the Texas Department of Criminal Justice, sent letters to three Texas state court judges and a United States bankruptcy judge through the United States mails. His first letter to Judge John R.

Carter stated:

> Now comes the Aryan warrior to bring you warning of your coming death when the new socialist government comes into power.  When the new government comes into power, all races other than the Aryan race will be deported or executed, all white judges will be checked out and will be asked to leave the country or be executed.
>
> This is your last warning to change your ways or die! The Aryan warrior has spoken.

An identical letter was sent to Judge Robert E. Raesz.  A substantially similar letter to Judge Lee S. Green threatened to "execute all judges at once," admonishing:  "Get right with your maker, because your time is at hand because the Aryan warrior shall sweep the earth."  Daughenbaugh also wrote to United States Bankruptcy Judge Larry E. Kelly:

> Now comes the Aryan shadow of death to let you know that your death is at hand.  I, the Aryan shadow of death, shall execute you in the very most painful way.  As the Lord said, every hair on your head is numbered. You will never again prosecute an Aryan.

In a second letter to Judge Carter which bore swastikas, Daughenbaugh stated:

> Now comes the "Lone Aryan warrior" with the Message of <u>Death</u> to all U.S. Zog (<u>Zionist</u> <u>Occupational</u> <u>Government</u>) American Government officials.  The Aryan Nationalist Socialist Movement brings forth an <u>all</u> Aryan Government to take the place of the U.S. Zog American Government! It <u>will</u> be done by force if necessary, but it will be done!  You are hereby given this Aryan Order of our movement to resign your Government office now, if you do <u>not</u> wish to face treason charges & <u>death</u> for serving this U.S. Zog American Government!  You are given this chance now, to save yourself by obeying this direct Aryan order! You have been warned; do what you are told!
>
> "Hail, Victory!"

Daughenbaugh was indicted on five counts of violating 18 U.S.C. § 876, which prohibits use of the mails to transmit a

2

communication containing a threat of injury, and was convicted after a jury trial. Departing upwards from the Sentencing Guidelines the district court imposed a sentence of 240 months. This appeal timely followed.

## Analysis

Daughenbaugh challenges the sufficiency of the evidence, contending that the letters were not threats but, rather, were political speech protected by the first amendment. He seeks a *de novo* review of this evidentiary issue because of its constitutional implications. In **United States v. Turner** we noted that "whether or not the language contained in [the defendant's] letters constitutes a `threat' is an issue of fact for the jury."[1] Guided by instructions, such as given herein, removing protected speech from the definition of "threat,"[2] the jury is to determine the nature of the subject communication.[3] Appellate review is limited to ascertaining whether a rational jury could have found the essential

---

[1]960 F.2d 461, 465 n.4 (5th Cir. 1992).

[2]In **Turner** we approved the following charge which was given herein to the jury:

> A "threat" is a serious statement expressing an intention to inflict bodily injury or death upon someone, which under the circumstances would cause apprehension in a reasonable person, as distinguished from political argument, idle or careless talk, exaggeration or something said in a joking manner. It is not necessary to prove that the defendant actually intended or was able to carry out the threat made.

[3]**United States v. Malik**, 16 F.3d 45 (2d Cir.), cert. denied, 115 S.Ct. 435 (1994).

3

elements of the offense, including the threat, proven beyond a reasonable doubt.

Our review of the record leads inexorably to the conclusion that the evidence amply supports the verdict. The plain language of the letters was sufficient to place a reasonable recipient in apprehension. The mode of communication -- private letter -- is the typical means for delivery of threats. In advancing his appellate challenge Daughenbaugh cites **United States v. Watts**.[4] We find **Watts** inapposite for it involved a public rally, not a private letter.[5] The political rhetoric accompanying the threats furnishes no consitutional shield. Rather, the violent tone of the rhetoric amplifies the threats. The reaction of the recipients is probative -- the three judges who testified took extra security measures.[6] A rational jury was entitled to find that the essential elements of the offenses were proven beyond a reasonable doubt.

Daughenbaugh next contests the refusal to suppress incriminating statements made to Scott Hendricks, an agent with the Federal Bureau of Investigation. When agent Hendricks inquired about the letters Daughenbaugh invoked his **Miranda**[7] rights and demanded counsel. One year later Hendricks met Daughenbaugh for routine questioning about a written statement he had given

---

[4]394 U.S. 705 (1969).

[5]See **United States v. Bellrichard**, 994 F.2d 1318 (8th Cir.), cert. denied, 114 S.Ct. 337 (1993).

[6]**Malik**.

[7]**Miranda v. Arizona**, 384 U.S. 436 (1966).

supporting another inmate's charge of a civil rights violation by a guard.[8] Hendricks also sought a handwriting exemplar. Hendricks testified that Daughenbaugh refused, exclaiming that if he were forced to furnish a sample of his handwriting he would merely disguise it, as he often does "and has other people write things for him." This statement was admitted into evidence over objection to corroborate the testimony of an inmate who attested to writing certain of the subject letters at Daughenbaugh's direction.

Daughenbaugh contends that the admission of the statement violated **Miranda** and its progeny. He maintains that **Arizona v. Roberson**[9] proscribed questioning about the civil rights charge and **Edwards v. Arizona**[10] prohibited Hendricks' request for the handwriting exemplar. We are not persuaded. **Roberson**, which forbids subsequent custodial interrogations about unrelated criminal offenses after the invocation of the fifth amendment right to counsel, is inapplicable because there was no threat of involuntary self-incrimination. The investigation of the civil rights charge was noncriminal in nature and the target was not Daughenbaugh but the guard. **Edwards**, which precludes the reinitiation of custodial interrogation after a request for counsel, applies only to conduct "that the authorities should know

---

[8]The inmate claimed the guard assaulted him after the inmate doused him with urine.

[9]486 U.S. 675 (1988).

[10]451 U.S. 477 (1981).

5

[is] reasonably likely to elicit an incriminating response."[11]  A handwriting sample is nontestimonial evidence beyond the scope of the right against self-incrimination.[12]  The bare request for a sample therefore does not implicate **Edwards**.

Finally, Daughenbaugh challenges the district court's departure from the Sentencing Guidelines range of 57 to 71 months to a sentence of 240 months.  After an evidentiary hearing, the court found that Daughenbaugh's criminal history category of VI did not adequately reflect the seriousness of his past conduct. Daughenbaugh's criminal history score was 24, nearly twice the 13 points required for category VI.  Even that score did not fully take into account Daughenbaugh's conduct in prison, including the repeated discovery of weapons in his possession and evidence of escape plans that included the taking of hostages or the killing of guards.  The court concluded:

> I can't find anything in the record that establishes any likelihood that you're not going to continue to commit criminal offenses.  You continue in prison and you continue here [in the county jails where Daughenbaugh was held during trial] at least in possession of weapons that can be concluded that you're attempting to escape once more.  In fact, your whole record shows that you seem to have a propensity to engage in criminal conduct at all times and perpetuate criminal acts.

In arriving at the sentence imposed, the district court scaled the criminal offense levels from 18 to 32, explaining, "I have considered all of the other offense levels up to a leval 35. . . .

---

[11]**United States v. Dougall**, 919 F.2d 932, 935 (5th Cir. 1990), cert. denied, 501 U.S. 1234 (1991).

[12]**Id.**

I considered the information in the presentence investigation and for the reasons I've stated, [selected] the level of sentencing I believe is appropriate in your case. . . ."

Daughenbaugh maintains that the district court did not comply with the proper methodology for departures under U.S.S.G. § 4A1.3, as articulated by our *en banc* decision in **United States v. Lambert**.[13] We do not agree. **Lambert** requires only that the district court consider each intermediate adjustment and state that it has done so, and explain why the guideline category is inappropriate and why the category chosen is appropriate.[14] Ordinarily such explanation will make clear, either implicitly or explicitly, why the intermediate adjustments are inadequate.[15] Such is the situation at bar. The district court complied with the **Lambert** teaching and struck a satisfactory balance between ritualistic formalism and arbitrariness.

Daughenbaugh also maintains that the departure was excessive. We are not persuaded. The departure was extensive but Daughenbaugh displayed unusually violent propensities. The sentence was below the statutory maximum and passes muster.

AFFIRMED.

---

[13]984 F.2d 658 (5th Cir. 1993) (*en banc*).

[14]See also **United States v. Ashburn**, 38 F.3d 803 (5th Cir. 1994) (*en banc*), petition for cert. filed (Feb. 13, 1995) (No. 94-8084).

[15]**Lambert**.

7