**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-11382

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DONALD KINNARD BATES, also known as Donald Keith Bates, also known as Donald Kinnond Bates, also known as Donald Kenneth Bates, also known as Donald Kevin Bates,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

(4:99-CR-117-1-Y)

November 21, 2000

Before DUHÉ, and PARKER, Circuit Judges, and LINDSAY,[*] District

Judge.

PER CURIAM:[**]

Appellant Donald Kinnard Bates appeals his conviction and

---

[*]District Judge of the Northern District of Texas sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

sentence for mail fraud and wire fraud. Bates claims that the trial court erred by (1) denying him the right to a speedy trial under 18 U.S.C. § 1361; (2) admitting an expert witness without conducting a *Daubert* inquiry; (3) relying on insufficient evidence of prior convictions in a presentence report; and (4) departing upward from the federal sentencing guidelines without sufficiently stating its rationale. For the reasons set out below, we affirm Mr. Bates' conviction.

I.

Donald Kennard Bates was indicted on July 7, 1999 for five counts of mail fraud and five counts of wire fraud. Bates allegedly opened a series of checking accounts with a false driver's license, deposited small amounts of money in the accounts, and wrote checks to purchase airline tickets for sums exceeding the funds in each account. He then used the tickets for travel or sent the tickets back to the airlines for refunds, which were delivered through the United States mail. At trial, witnesses from approximately nine banks testified that Bates had opened accounts and written checks for insufficient funds. The total number of "hot" checks exceeded 170. The total loss to the airlines was over $300,000.

On September 23, 1999, after a three-day trial, the jury returned a verdict finding Bates guilty on all counts of the indictment. After considering a presentence report and the

2

relevant federal sentencing guidelines, the district judge sentenced Bates to an aggregate of 120 months in prison. Bates timely appeals his conviction and sentence.

## II.

Bates first contends that the trial court erred by failing to dismiss his indictment because he was not tried within seventy days of the date he was indicted as required by the Speedy Trial Act. 18 U.S.C. § 3161(c)(1). "We review the facts supporting a Speedy Trial Act ruling using the clearly erroneous standard and the legal conclusions de novo." *United States v. Bermea*, 30 F.3d 1539, 1566 (5th Cir. 1994).

Bates filed a motion to dismiss on August 6, 1999, which the trial court denied on August 11. Bates claims that this five-day period during which his motion to dismiss was pending should be included in the total seventy-day period. If the time in which the motion was pending before the court did not toll the seventy-day period, then the trial court erred by commencing his trial after the Speedy Trial Act's seventy-day limit. 18 U.S.C. § 3161(c)(1).

The Speedy Trial Act, designed to protect a defendant's right to a quick trial and the public's interest in curbing the periods of a defendant's release on bail, requires a court to dismiss a defendant's indictment if the defendant is not brought to trial before the end of seventy days after the defendant is indicted or appears before a judge or magistrate, whichever is later. *Id.;*

3

*United States v. Grosz*, 76 F.3d 1318, 1323 (5th Cir. 1996); *United States v. Johnson*, 29 F.3d 940, 942 (5th Cir. 1994). However, the Speedy Trial Act provides exceptions for delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . .." 18 U.S.C. § 3161(h)(1)(F). Subsection F is separated into two categories. *See Henderson v. United States*, 426 U.S. 321, 328 (1986). The first category includes situations where a pretrial motion requires a hearing. *See id.* The second group involves pretrial motions that do not require a hearing. *See id*. Bates' argument concerns the latter variety.

Where a pretrial motion does not require a hearing, Subsection F excludes the delay caused by a pending motion from the total seventy-day period. 18 U.S.C. § 3161(h)(1)(F). However, the delay is limited to a "prompt disposition" of the motion, which cannot exceed thirty days. *Id.* § 3161(h)(1)(F), (J); *Henderson*, 476 U.S. at 329; *Bermea*, 30 F.3d at 1566. Bates does not argue that the court unduly delayed ruling on his motion to dismiss; rather, he argues that the five-day period in which the court ruled on his motion did not directly result in the delay of his trial, and therefore should not be excluded from the total seventy-day period. We address whether a pending pretrial motion constitutes a delay for purposes of the Speedy Trial Act without any indicia that the pending motion directly caused the postponement of a defendant's

trial.

The plain language of section 3161(h)(1)(F) indicates that periods of delay "*resulting* from any pretrial motion" will be excluded from computing the time within which the trial of an offense is commenced. *See United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994) (holding that when a court postpones a motion to dismiss until after trial, the fact that the motion was pending beforehand does not toll the seventy-day period in which the court should have tried the case). The statute does not explicitly state that pretrial motions must directly cause the delay of a defendant's trial. Section 3161 expresses that a "period of delay" includes a "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(F). In other words, the statute simply takes account of the necessary pretrial impediments that all trial courts must overcome before beginning a criminal trial. *See, e.g., Johnson*, 29 F.3d at 944-45 (allowing limited exclusions for periods of delay under Subsection F for a motion in limine, a motion for a bill of particulars, and a motion to suppress evidence); *United States v. Calle*, 120 F.3d 43, 46 (5th Cir. 1997) (holding that the seventy-day time period was tolled by a motion to dismiss, a motion to revoke detention, a motion to substitute an attorney, and a motion for a pretrial determination of entrapment); *Grosz*, 76 F.3d at 1323 (stating that a motion in limine will toll the time period under the Act). The Act does not require either the defendant or the

5

government to establish that a pending motion actually delayed the commencement of the defendant's trial. For the purposes of Subsection F, any interlude caused by the trial court's consideration of a pretrial motion constitutes a period of delay as long as it comports with the principles set forth by the Supreme Court in *Henderson v. United States*. *See Henderson*, 476 U.S. at 329; *Johnson*, 29 F.3d at 943 n.3 (noting that courts must look into the circumstances of a pretrial motion to determine whether the motion was taken under advisement as required by *Henderson*).

Because Bates has not claimed that the five-day period in which the trial court considered his motion to dismiss was other than a "prompt disposition" under Subsection F, the five-day period of delay will be excluded from the seventy days in which the court could commence his trial. Bates does not dispute that excluding the five-day period would bring his trial within the requirements of the Speedy Trial Act.[1] We therefore affirm the trial court's denial of the defendant's motion to dismiss.

---

[1]Bates claims that the actual reason for the delay of his trial was the court's *sua sponte* motion for continuance in which the district judge delayed Bates' trial because an earlier criminal trial was set for the same day. 18 U.S.C. § 3161(h)(8)(C) states that a court cannot exclude time from the seventy-day period because of general congestion in the court's docket. Nevertheless, after excluding the five-day period of delay resulting from Bates' motion to dismiss, the court commenced his trial within the seventy-day period. The trial court's continuance is of no consequence under the Speedy Trial Act.

III.

Bates also claims that the trial court erred by admitting the testimony of a handwriting analyst without first conducting its own *Daubert* inquiry or allowing Bates' attorney to perform a *Daubert* examination of the government's witness. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Bates first raised the issue of whether handwriting analysis meets the *Daubert* requirements in a motion in limine he filed on September 14, 1999. Bates' counsel moved to withdraw the motion, and the court granted counsel's motion to withdraw on September 17, 1999. At trial, Bates' attorney asked the government's expert witness about the scientific reliability of handwriting analysis. The district judge interrupted the examination and told counsel that a *Daubert* hearing was inappropriate at that time. Counsel then passed the witness without objecting or moving for a hearing.[2]

We review a district court's decision concerning reliability of expert testimony under an abuse of discretion standard. *See*

---

[2]The exchange between the judge and Bates' attorney took place as follows:

THE COURT: Well, I would have thought for that, which would be a *Daubert* challenge, that you would have filed a motion for that to be tested outside the presence of the jury. So, if you're conducting a *Daubert* hearing, I think it's inappropriate and untimely.

DEFENSE COUNSEL: Yes, sir. Well, I'll tender the witness, back, and I would like an opportunity to ask some additional questions.

THE COURT: Certainly

*Kumho Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1171 (1999). However, when a party fails to contemporaneously object to the admissibility of evidence at trial, we apply the plain error standard of review. *See United States v. Bilbo*, 19 F.3d 912, 916 (5th Cir. 1994). We must first decide which standard applies to Bates' appeal.

It is without question that Rule 702 of the Federal Rules of Evidence imposes an obligation on trial courts to ensure that all expert testimony is reliable. *See Kumho Tire Co.*, 119 S.Ct. at 1174. The trial court, in performing its "gatekeeping" function, has discretion to choose the manner in which the reliability of an expert's testimony is appraised. *See id*. However, the trial court has no discretion to abandon its role as gatekeeper. *See id*. at 1179 (Scalia, concurring). When a party objects to an expert's testimony, the court "must adequately demonstrate by specific findings on the record that it has performed its duty . . .." *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). Absent an objection, the trial judge is not required to announce for the record that the expert witness's testimony is based on reliable methodology. *See Hoult v. Hoult*, 57 F.3d 1, 5 (1st Cir. 1995)(holding that a court implicitly performs a *Daubert* analysis "*sub silentio* throughout the trial with respect to all expert testimony"). A defendant must still make a timely objection to preserve error for appeal. FED. R. EVID. 103(a)(1).

If the defendant fails to object to the expert's testimony, then the defendant "waives appellate review absent plain error." *Goebel*, 215 F.3d at 1088 n.2. *See also Marbled Murrelet v. Babbit*, 83 F.3d 1060, 1066 (9th Cir. 1996)(holding that a litigant waived its *Daubert* objections by failing to request a ruling on the admissibility of evidence).

Bates' attorney attempted to question the reliability of the government's handwriting evidence at trial. The court interjected stating that Bates' counsel should have filed a motion for a *Daubert* hearing outside the presence of the jury and that his questioning was inappropriate at that time. Instead of objecting to the witness or moving for a *Daubert* hearing, Bates' attorney passed the witness. Because Bates' attorney did not object to the admission of the evidence, we review the trial court's admission of the government's handwriting expert for plain error.

"Under the plain error standard, forfeited errors are subject to review only where the errors are 'obvious,' 'clear,' or 'readily apparent,' and they affect the defendant's substantial rights." *United States v. Clayton*, 172 F.3d 347, 351 (5th Cir. 1999)(quoting *Douglas v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc)). The trial court's admission of the expert's testimony regarding handwriting analysis does not even amount to an error, much less an obvious error affecting the defendant's substantial rights. "Courts have long received

9

handwriting analysis testimony as admissible evidence." *United States v. Paul*, 175 F.3d 906, 910 n.2 (11th Cir. 1999)(citing *United States v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir. 1997); *United States v. Velasquez*, 64 F.3d 844, 848-50 (3d Cir. 1995)). Because testimony involving handwriting analysis has been readily admitted in criminal cases, the trial court did not commit plain error. We affirm the trial court's admission of the expert's testimony.

IV.

In his third argument, Bates claims that the trial court's deference to the information in the presentence report (PSR) was not supported by reliable evidence and should not have been considered at sentencing. Factual findings used in sentencing must be supported by a preponderance of the evidence, and "[w]e review challenges to such findings for clear error." *United States v. Griffith*, 118 F.3d 318, 326 (5th Cir. 1997). "A finding of fact is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed." *United States v. Bermea*, 30 F.3d 1539, 1575 (5th Cir. 1994)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The trial court may consider information in the PSR if the information has "some minimum indication of reliability." *United States v. Vela*, 927 F.3d 197, 201 (5th Cir. 1991); *United States v.*

10

*Morris*, 46 F.3d 410, 425 (5th Cir. 1995). A PSR alone "generally bears sufficient indicia of reliability . . .." *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990). Because Bates attacks the reliability of the PSR, he bears the burden of establishing that the information in the PSR is inaccurate. *See United States v. Aubin*, 87 F.3d 141, 150 (5th Cir. 1996) (citing *Vela*, 927 F.3d at 201).

Bates' PSR contained records of convictions from Hawaii, California, Oregon, Washington, and Iowa. Probation Officer Hammond prepared the report and testified that she conducted a thorough investigation of Bates' criminal history. Her investigation included a search in the National Crime Information Computer and correspondence with other probation officers who handled Bates' previous convictions. Her investigation linked Bates with each of the convictions listed in the PSR. Special Agent Sumner also testified that the inmate photographs from the penitentiary packets were an "obvious match" to Bates.

Bates argues that the testimony of Agent Sumner and Officer Hammond was "vague" and did not sufficiently link Bates to the convictions listed in the PSR. We conclude that the district judge could easily find that the information in the PSR was thoroughly investigated by Probation Officer Hammond and sufficiently reliable to link Bates to the other convictions. *See Morris*, 46 F.3d at 425-26. The trial court's consideration of the convictions listed

11

in the PSR was not clear error.  Since Bates offers no evidence that contradicts the information in the PSR, we will not disturb the trial court's factual findings.

V.

Finally, Bates contends that the trial court used an inappropriate method for calculating the extent of the upward departure from the sentencing guidelines.  He specifically claims that the court did not consider each intermediate criminal history category or adequately explain his departure from the sentencing guidelines.  We review a trial court's decision to depart from the sentencing guidelines for abuse of discretion.  *See United States v. McKenzie*, 991 F.2d 203, 204 (5th Cir. 1993).

A trial court "must evaluate each successive criminal history category above or below the guideline range for a defendant as it determines the proper extent of departure."  *United States v. Lambert*, 984 F.2d 658, 662 (5th Cir. 1993) (en banc).  If the court chooses to depart from the guidelines, it must give reasons for its departure and explain why the sentence it imposes is appropriate.  *See id*. at 663.  The trial court is not required "to go through a ritualistic exercise in which it mechanically discusses each criminal history category that it selects."  *Id*.  A trial court's reference to a defendant's criminal history set out in a PSR adequately establishes the factors that warrant a departure from the sentencing guidelines.  *See McKenzie*, 991 F.2d at 205.

12

At Bates' sentencing, the district judge cited the PSR, which established that Bates had almost twice the criminal history points necessary for a category VI imprisonment range of 51 to 71 months. The court expressed the following explanation for its departure from the sentencing guidelines:

> The Court finds that the defendant's criminal history category of VI does not adequately reflect the seriousness of his past criminal conduct or the liklihood that he will commit other crimes. The Court has moved incrementally down the criminal history category VI scale in the sentencing table of the guidelines manual. Based on the departure information in Paragraph 115 of the presentence report and other paragraphs cited by the Court, the Court has determined that a sentence of 120 months is appropriate. The sentence will meet the objectives of punishment, deterrence, and incapacitation of the offender for the protection of the public.

The district judge clearly considered each intermediate adjustment and gave reasonable justifications for its upward departure from the sentencing guidelines. *See United States v. Daughenbaugh*, 49 F.3d 171, 174-75 (5th Cir. 1995); *Ashburn*, 38 F.3d at 809-10; *McKenzie*, 991 F.2d at 205-06. The trial court's assessment of 120 months is not the type of drastic departure that warrants a detailed explanation. *Ashburn*, 38 F.3d at 809-10 ("Although the

13

sentence imposed in this case is more than twice the recommended guideline range, it was not the sort of drastic departure . . ." that would require a more detailed explanation). We find that the trial court did not abuse its discretion by departing from the sentencing guidelines.

## VI.

In conclusion, we affirm the conviction of Bates on all counts of wire fraud and mail fraud. The trial court neither violated Bates' rights under the Speedy Trial Act nor abused its discretion in admitting the government's expert witness. We also affirm the trial court's findings of fact concerning Bates' criminal history and its imposition of Bates' sentence.

AFFIRMED