# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2014

Lyle W. Cayce
Clerk

No. 12-30459

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BENET SCHMIDT, also known as Brazthumper,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CR-62

Before JONES, WIENER, and GRAVES, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Benet Schmidt pleaded guilty to one count of engaging in a child exploitation enterprise in December of 2011. After the district court sentenced Schmidt to 444 months of imprisonment, he timely appealed, challenging his sentence on procedural and substantive grounds. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30459

## I. FACTS AND PROCEEDINGS

Schmidt made several posts containing child pornography to a members-only online bulletin board service called "Dreamboard." That service's administrators required applicants for membership to submit a post containing child pornography as part of the application. Such initial posts, like those made by existing members, typically included sample images, a description, and instructions for locating and downloading child pornography. Members risked deletion of their Dreamboard accounts if they failed to post child pornography regularly.

Dreamboard's structure comprised several membership levels. Higher levels afforded access to more child pornography; each member was entitled to view posts made by other members of equal or lower membership levels. "Administrators"—the highest level—approved or rejected membership applications and promoted or demoted members based on the content and number of their posts. There were four levels of membership below Administrator: "Super VIP."[1] "Super VIP," "VIP," and "Member." Only members who posted child pornography that they had produced themselves could attain the "Super VIP." level.

According to the factual basis, Schmidt made 70 posts, most of which were in the VIP area and thus available only to other VIP members and members of higher rank. The factual basis also states that Schmidt's "level of membership was VIP." It is not clear from the record, however, whether Schmidt's membership began at the VIP level or began at the Member level and was subsequently elevated to the VIP level.

Schmidt pleaded guilty to one count of engaging in a child exploitation enterprise. The parties do not dispute that the district court properly

---

[1] The period in "Super VIP." was part of that level's label.

2

calculated Schmidt's Guidelines range as 240-293 months, given the statutory minimum of 240 months and the statutory maximum of life. This range reflects the 20-year statutory minimum, a total offense level of 38, and a criminal history category of I. The total offense level in turn reflects a base offense level of 35, a four-level enhancement for a victim under the age of 12, a two-level enhancement for use of a computer, and a three-level reduction for acceptance of responsibility.

At sentencing, Schmidt expressed remorse; apologized to the court, the victims, and society at large; acknowledged that he was addicted to child pornography; and expressed a desire to receive treatment for that addiction. He did not ask for a below-Guidelines sentence, but he did request leniency. Schmidt also characterized the child pornography he viewed as involving underage victims who were "smiling," and suggested that he did not "realize that there was still abuse going on." The government countered that Schmidt's characterization was "distorted," describing his posts as depicting "the worst kind of abuse of our very youngest children," including four-year-old children being violently sodomized by adult men. The government offered that, if the contents of Schmidt's images were placed along a continuum with those of all other co-defendants, "a 3553(a) sentence versus a guideline sentence" would be warranted.

The district court interrupted the government attorney's remarks to note that Schmidt did not *produce* child pornography, a fact which the government attorney then acknowledged. At the conclusion of the government's presentation, the district court adopted the Guideline calculation from the presentence investigation report ("PSR") and stated that the Guidelines failed to reflect the nature and severity of the abuse of the children depicted in Schmidt's posts. After the district court twice referred to Schmidt as a Super VIP-level member of Dreamboard, Schmidt conferred with his counsel,

prompting the district court to ask whether the court had misstated something. Schmidt responded that he had been a VIP member, not a Super VIP member. The court acknowledged the correction, then commented: "In this instance, I have to look at the nature of the posts as well, because it tells me that you were probably on the upswing, up the ladder, up the vine of membership levels that was Dreamboard." The district court adopted the factual findings from the PSR and the addendum, then sentenced Schmidt to 444 months of imprisonment and a life term of supervised release.

After pronouncing the sentence, the district court made several explanatory comments. It described the content of Schmidt's posts as "almost unbelievable" and "rank[ing] at or near the top" "in terms of the kind of material posted . . . because these children are in obvious distress being sodomized by adult males." The court noted that each act of distribution and each viewing of child pornography constitutes a separate act of abuse against the depicted child victims, and stated that it intended to protect the public from Schmidt's future crimes. The court repeated that the Guidelines "do not adequately punish or describe . . . how vile this type of abuse is with children." It also stated that it had considered the sentencing factors listed in Title 18, United States Code, Section 3553(a), and concluded that the Section 3553(a) analysis was appropriate under the circumstances. It made specific reference to the Guidelines and to Schmidt's personal characteristics, including his lack of criminal history, his involvement in the offense, and his addiction to child pornography. With regard to that addiction, the district court stated that it "appears to me to be progressive in kind and character, which is of serious concern to this Court."[2]

---

[2] The district court's written Statement of Reasons also reflects its determination that Schmidt's sentence was appropriate based on six of the statutory factors: (1) the nature and

No. 12-30459

## II. STANDARD OF REVIEW

Schmidt made no objections to the PSR and made none during the sentencing hearing or when his sentence was imposed. Thus, our review is for plain error.[3] Only when a plain error affects both the defendant's substantial rights and the fairness, integrity, or public reputation of judicial proceedings do we have discretion to correct it.[4]

## III. ANALYSIS

### A. Procedural Error

A district court commits procedural error when it "select[s] a sentence based on clearly erroneous facts."[5] A district court may draw reasonable inferences from the facts, and these inferences are factual findings that we review for clear error.[6]

Schmidt argues that the district court committed procedural error by selecting his sentence on the basis of two erroneous factual findings: (1) The

---

circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the need to afford adequate deterrence; (4) the need to protect the public from further crimes of the defendant; (5) the need to provide appropriate medical care or other correctional treatment to the defendant; and (6) the avoidance of unwarranted sentencing disparities among defendants.

[3] *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

[4] *See Mondragon-Santiago*, 564 F.3d at 357 (citing *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005)). Employing alternate phrasing, we have explained that plain-error review comprises four determinations: "(1) if there was error, (2) if it was plain, (3) if the error affects substantial rights, and (4) if allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Alvarado*, 691 F.3d 592, 598 (5th Cir. 2012) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

[5] *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011) (citing *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008)).

[6] *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).

Guidelines did not adequately address the content of Schmidt's posts; and (2) Schmidt was on the "upswing" of membership levels at Dreamboard. Schmidt suggests further that the district court's initial references to him as a Super VIP member, although corrected by Schmidt's counsel at the sentencing hearing, nonetheless indicate "confusion" on the part of the court regarding the degree of Schmidt's involvement.

We cannot even assume *arguendo* that, by weighing the content of Schmidt's posts in fashioning his sentence, the district court made a factual finding that could possibly constitute procedural error, because we made clear in *United States v. Dickson* that a district court may "consider[] the nature of the images" when sentencing a defendant for possession of child pornography.[7] In *Dickson*, we applied plain-error review to affirm the district court's application of a sentencing enhancement.[8] The defendant correctly objected to the district court's calculation of his base offense level, but we concluded that the court had ample independent bases for imposing an 840-month sentence, which was the statutory maximum and was significantly above the properly calculated Guidelines range.[9] These independent bases included the sadistic and violent content of the child pornography.[10] Here, the district court committed no error, plain or otherwise, when it considered the violent content of Schmidt's posts. His claim of procedural error fails.

Schmidt's remaining basis for claiming procedural error also fails. The district court made the following remark at the sentencing hearing, with

---

[7] *United States v. Dickson*, 632 F.3d 186, 192 (5th Cir. 2011), *cert. denied*, 131 S. Ct. 2947 (2011).

[8] *Id.* at 190-92.

[9] *Id.*

[10] *Id.*

emphasis supplied: "In this instance, I have to look at *the nature of the posts* as well, because it tells me that you were probably on the upswing, up the ladder, up the vine of membership levels that was Dreamboard." We disagree with Schmidt's contention that this remark was an unsupported mischaracterization of his membership history. The district court assessed the *posts*—not Schmidt's history of membership promotions or the lack thereof— and inferred *from the posts* that Schmidt "was probably on the upswing," or that he would likely have received a promotion at some point in the future but for the intervention of law enforcement officers. As discussed above, the district court's consideration of the nature of the posts was proper under applicable precedent. Neither did the district court plainly err when it inferred that Schmidt likely would have received a future promotion on the basis of the number of his posts, 70, and the graphically violent nature of the depicted abuse. The district court did not select a sentence based on erroneous facts or inferences, and therefore it did not procedurally err.

## B. Substantive Error

In the next step of our bifurcated review, we consider the totality of the circumstances, including the extent of the variance from the Guidelines range, to assess the substantive reasonableness of Schmidt's sentence.[11] The United States Supreme Court has explained that, "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so."[12] Under some circumstances, a brief explanation will suffice, especially when the issue is "conceptually simple."[13] We have also explained that "a checklist

---

[11] *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Fraga*, 704 F.3d 432, 439-40 (5th Cir. 2013).

[12] *Rita v. United States*, 551 U.S. 338, 357 (2007).

[13] *Id.*

recitation of the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable."[14]

Our "review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."[15] The deference we owe the sentencing court is even greater when, as here, our review is for plain error only. Moreover, although we "may consider the extent of the deviation, [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."[16] To be sure, "[a] major departure should be supported by a more significant justification than a minor one." But "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."[17] Ultimately, "[a] non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[18] The Supreme Court has soundly rejected a formulaic or

---

[14] *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (citations omitted); *see also Fraga*, 704 F.3d at 438-39.

[15] *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) (quoting *United States v. Key*, 599 F.3d 469, 473 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 997 (2011)).

[16] *Gall*, 552 U.S. at 51.

[17] *Id.* at 50-51. Generally, only within-Guidelines sentences are treated as presumptively reasonable, but the court "may not apply a presumption of unreasonableness" to sentences outside the guidelines. *Id.* at 51; *see also United States v. Alvarado*, 691 F.3d 592, 596-98.

[18] *Smith*, 440 F.3d at 708.

8

"mathematical approach" to evaluating the substantive reasonableness of a variance, including an approach that attempts to quantify the variance and the justification and ensure that they are proportional.[19]   As we have determined that the district court did not commit procedural plain error in sentencing Schmidt, we conclude our review for substantive error by addressing in turn each of the reasons Schmidt advances for such error.

Schmidt's primary contention of substantive error is that the district court's reasoning is insufficient to justify the extensive variance.   More specifically, Schmidt urges that the district court clearly erred in balancing the sentencing factors.   He suggests that the district court should have given greater weight to such factors as (1) the absence of evidence that he *produced* child pornography, (2) the absence of evidence that he participated in setting up or administering Dreamboard, and (3) the fact that letters of support describe him as a warm person who suffers from psychological problems.   In the same vein, Schmidt claims that the district court should have given less weight than it did to such factors as (1) the pain the child victims experienced, (2) the victims' ages, and (3) the conclusional inference that Schmidt was on the "upswing," as discussed above in the context of his claim of procedural error.   Schmidt suggests that the district court sentenced him "as if he [were] the architect of the website and participated in sexual activity."

The government responds that Schmidt's sentence is substantively reasonable because the district court appropriately weighed the relevant factors, including (1) the nature of the images, (2) Schmidt's admitted addiction to child pornography, and (3) the level of his participation in Dreamboard.   The

---

[19] *Gall*, 552 U.S. at 46-51.

government insists that the district court's explanation of its reasoning provides ample justification for the sentence it imposed.

The 151-month addition above the top of Schmidt's advisory range constitutes a 51.5% upward variance. When assessing the substantive reasonableness of sentences, we have upheld some that were substantially above, or multiples of, the top of the Guidelines range.[20] Schmidt cites no opinion of this court reversing a sentence based on an error of judgment in balancing the sentencing factors, whether under plain-error review or under some more stringent standard. After considering the totality of the circumstances, including the extent of the variance and the district court's justification, we conclude that the court did not plainly err in balancing the sentencing factors when fashioning Schmidt's sentence.

Schmidt implies that the district court sentenced him above the Guidelines range without adequate notice. This contention fails because the

---

[20] *See, e.g.*, *United States v. Lopez-Moreno*, 12-41031, 2013 WL 3213531 (5th Cir. June 26, 2013) (unpublished) (per curiam) (finding no abuse of discretion in the imposition of a 96-month sentence when the top of the advisory range was 57 months); *United States v. Gutierrez*, 635 F.3d 148, 154-55 (5th Cir. 2011) (finding no abuse of discretion in the imposition of a sentence of 50 months when the top of the advisory range was 21 months); *United States v. Williams*, 517 F.3d 801, 805-13 (5th Cir. 2008) (finding no abuse of discretion in the imposition of a 172-month sentence where the top of the advisory range as calculated by the district court was 97 months and the top of the range as re-calculated on appeal was 121 months); *United States v. Brantley*, 537 F.3d 347, 348-50 (5th Cir. 2008) (finding no plain error in the imposition of a 180-month sentence where the top of the advisory range was 51 months); *United States v. Herrera-Garduno*, 519 F.3d 526, 531-32 (5th Cir. 2008) (finding no abuse of discretion in a 60-month sentence when the top of the advisory range was 27 months); *United States v. Smith*, 417 F.3d 483, 490–93 (5th Cir. 2005) (upholding a 120-month sentence, the statutory maximum, when the top of the advisory range was 41 months); *United States v. Daughenbaugh*, 49 F.3d 171, 174–75 (5th Cir. 1995) (affirming departure from guidelines maximum of 71 months to sentence of 240 months).

No. 12-30459

notice requirement of Rule 32(h) of the Federal Rules of Criminal Procedure does not apply to variances.[21]

Schmidt further suggests that his counsel unreasonably failed to file a sentencing memorandum, to object to the pre-sentence investigation report, and to object to the sentence at the sentencing hearing. These suggestions are unavailing because Schmidt did not challenge the effectiveness of his counsel's assistance in the district court, instead offering these critical remarks for the first time on appeal. "[T]he general rule in this circuit is that a claim for ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations."[22]    Accordingly, we decline to address this argument.

## IV. CONCLUSION

Schmidt has failed to show that the district court committed plain error in sentencing him. We therefore AFFIRM his sentence.

---

[21] *Irizarry v. United States*, 553 U.S. 708, 714 (2008); *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011).

[22] *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007 (1992) (citations and quotation marks omitted); *see also United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006).

JAMES E. GRAVES, Circuit Judge, concurring:

Although I join in the opinion of the court, I write separately to address my concern that Schmidt's sentence appears to be unreasonably disproportionate. *See, e.g.*, *United States v. Armstrong*, 550 F.3d 382, 406 (5th Cir. 2008) (explaining that a defendant may establish substantive unreasonableness by identifying "a case in which a similarly-situated defendant received a lower sentence"), *overruled on other grounds by United States v. Guillermo Balleza*, 613 F.3d 432, 433 n.1 (5th Cir. 2010).

When Schmidt was sentenced on April 5, 2012, fifteen other defendants had already been sentenced by the same judge for the same offense, 18 U.S.C. § 2252A(g), based on their involvement with the same bulletin board, Dreamboard.[1]  The average sentence imposed was 286.4 months of imprisonment.  Schmidt's sentence of 444 months was the highest that had been imposed up to that point, and was over 13 years above the average and over 12 years above the maximum guidelines range.  This is somewhat surprising, given that Schmidt had no criminal history at all; that there was

---

[1] Nine of these defendants were co-defendants charged in the same series of indictments that included Schmidt, Case No. 5:11-CR-62 in the Western District of Louisiana:  Charles Pyeatte, sentenced on September 13, 2011, to 327 months, Doc. #315; David Michael Whitten, sentenced on October 5, 2011, to 420 months, Doc. #344; Christopher James Luke, sentenced on October 5, 2011, to 240 months, Doc. #346; Stephen Clinton Kinney, sentenced on October 14, 2011, to 293 months, Doc. #353; Rush Frank Blankenship, sentenced on December 1, 2011, to 240 months, Doc. #390; William L. Barton, sentenced on January 5, 2012, to 327 months, Doc. #413; Anthony Paul Sowders, sentenced on January 5, 2012, to 324 months, Doc. #416; Gary Schneider, sentenced on January 12, 2012, to 240 months, Doc. #422; and Jamil Lamar Mosley, sentenced on January 17, 2012, to 240 months, Doc. #423.

Six of these defendants were charged in a separate indictment, Case No. 5:10-CR-319 in the Western District of Louisiana:  Timothy Gentry, sentenced on May 10, 2011, to 300 months, Doc. #427; Michael Biggs, sentenced on May 31, 2011, to 240 months, Doc. #430; Michael Childs, sentenced on June 22, 2011, to 360 months, Doc. #438; Charles Edward Christian, sentenced on July 14, 2011, to 265 months, Doc. #454; Micheal Thompson, sentenced on September 13, 2011, to 240 months, Doc. #469; and Larry Ridley, sentenced on October 26, 2011, to 240 months, Doc. #490.

no allegation that he had ever personally produced child pornography or otherwise abused children; that his membership level was equal to or lower than that of most of these other defendants; and that he pled guilty and cooperated with the government.

In imposing a sentence, a district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The district judge in this case acknowledged this requirement; at sentencing, he explained that 72 people had been indicted in connection with Dreamboard, and recognized that he must "look[] at the overall ranking of other people" and "properly place [Schmidt] on the vine of membership of Dreamboard."

The district judge stated that he must "look at the number of posts." However, none of the fifteen defendants sentenced before Schmidt had fewer posts, and some of them had over ten times as many posts as Schmidt.[2] The district judge also stated that he must "look at the [membership] level that [Schmidt] occupied." However, of the fifteen other defendants sentenced before Schmidt, seven occupied the same VIP level as Schmidt, and three were actually at the higher Super VIP level.

Of the reasons given by the district judge for Schmidt's exceptionally high sentence, only two could potentially distinguish Schmidt from the other defendants listed above: the graphic, highly abusive nature of the pornography

---

[2] The number of posts and membership levels are taken from the factual bases for each defendant's plea. In Case No. 5:11-CR-62, see Doc. #144-2 (Schneider); Doc #146-2 (Pyeatte); Doc #209-2 (Luke); Doc #216-2 (Kinney); Doc #220-2 (Whitten); Doc #229-2 (Sowders); Doc. #227-2 (Mosley); Doc. #298-2 (Blankenship); and Doc. #312-2 (Barton). In Case No. 5:10-CR-319, see Doc. #320-2 (Childs); Doc. #396-2 (Christian); Doc. #423-2 (Thompson); and Doc. #453-3 (Ridley). The factual bases for Biggs and Gentry are unavailable on the district court docket. Additionally, the factual basis for Schneider does not state his number of posts.

posted by Schmidt, and Schmidt's admitted addiction to pornography, including child pornography.[3] It is unclear, however, whether these factors actually indicate any greater culpability or dangerousness on Schmidt's part. Anthony Paul Sowders, who was at the same membership level as Schmidt with the same number of posts, received a much lower sentence of 327 months, despite having personally exploited children to produce pornography.[4] David Michael Whitten, at the same membership level and with sixteen times as many posts as Schmidt, received a slightly lower sentence of 420 months, despite the fact that he had repeatedly sexually abused a young child over a ten-year period.[5]

The district judge concluded, based on the extreme, hard-core nature of Schmidt's posts, that he was "on the upswing" in membership levels; this would seemingly imply that Dreamboard members at higher membership levels posted more extreme conduct and are therefore more culpable. However, three of the defendants sentenced before Schmidt were already at the higher Super VIP level; one of these defendants received the mandatory minimum of 240 months, and the other two received sentences under 300 months.[6] Finally, several defendants who received much lower sentences than Schmidt posted files with names that imply the sodomization of young children, which the

---

[3] The district judge also relied on his finding that Schmidt was "probably on the upswing" in membership levels. However, as the court's opinion notes, this was an inference based on the nature of Schmidt's posts.

[4] See the transcript of Sowders' sentencing hearing, Case No. 5:10-CR-319, Doc. #470.

[5] See the transcript of Whitten's sentencing hearing, Case No. 5:10-CR-319, Doc. #379.

[6] Larry Ridley, sentenced to 240 months; Charles Edward Christian, sentenced to 265 months; and Stephen Clinton Kinney, sentenced to 293 months.

No. 12-30459

district court characterized as being among the most extreme and disturbing content.[7]

Nevertheless, inasmuch as Schmidt's counsel neither raised the issue of disparity at sentencing nor objected to the reasonableness of the sentence imposed, the district judge had no reason to further explain his rationale. There may very well be compelling reasons why Schmidt's sentence is appropriate under the factors of 18 U.S.C. § 3553, regardless of any disparity between co-defendants. Furthermore, because transcripts of the sentencing hearings for many of the defendants sentenced before Schmidt are unavailable, we are unable to consider the specific reasons the district judge relied upon in imposing their sentences. Accordingly, I agree that the district judge did not plainly err in sentencing Schmidt.

---

[7] See Ridley factual basis, Case No. 5:10-CR-319, Doc. #453-3 at 4; Thompson factual basis, Case No. 5:10-CR-319, Doc. #423-2 at 4; Whitten factual basis, Case No. 5:11-62, Doc. #220-2 at 4.