# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2026

Lyle W. Cayce
Clerk

———————

No. 25-10429
Summary Calendar

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Timothy Muller,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CR-157-1

———————————————————

Before Higginbotham, Engelhardt, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

After leaving a disturbing voicemail on an FBI agent's phone, Timothy Muller was convicted of transmitting a threat by interstate communication and retaliation against a federal official. Muller challenges whether his statements were a true threat, the instructions given to the jury,

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10429

the district court's statements during trial, and the composition of the jury. We affirm.

## I.

After Hunter Biden was convicted of a gun crime, Muller became upset that Biden was not prosecuted for other crimes allegedly evidenced on his laptop. A report circulating online detailed Biden's other alleged crimes and listed the contact information for federal agents who investigated Biden's laptop. Muller found FBI agent Joshua Wilson's phone number in the report and out of a "sense of curiosity" and to "investigate" the report's allegations, called Agent Wilson. When Agent Wilson answered, Muller said, "Hey, Josh." Not recognizing the caller, Agent Wilson hung up. Muller immediately called back and left a voicemail accusing Agent Wilson of covering up Biden's alleged crimes and stating that "Trump's gonna win the re-election, and then we're gonna f---cking go through the FBI and just start throwing you . . . into jail. Or you can steal another election, and then the guns will come out, and we'll hunt you . . . down and slaughter you like the traitorous dogs you are in your own f---ing homes." Muller went on to state, "[w]e're going to slaughter your whole f---ing family." Agent Wilson was immediately concerned, took measures to ensure his family's safety, and began investigating. Over the next hour, Muller sent Agent Wilson text messages including: "How's the family? Safe?"; "We want you so bad we can f---king taste it."; and "Did you . . . really think you were going to disenfranchise 75 million Americans and not die? Lol."

The FBI arrested and interviewed Muller. Muller initially denied making any phone calls, leaving a voicemail, or sending text messages, but ultimately admitted to doing so. He rejected the characterization of the voicemail as a threat and stated that it was "hypothetical in nature." He

acknowledged, however, that if he received that call, "he would have felt threatened" and "frightened."

At trial, Muller testified that he did not intend to threaten anyone and was "just venting," not believing "anyone would ever hear it." On cross-examination, Muller denied threatening to kill Agent Wilson's family. The prosecutor attempted to re-play the voicemail, but the district court implicitly denied the request, stating that Muller "admitted that he said this. It's up to you guys in a moment to talk about what you think this means and about credibility. . . . I'm inclined to move on and let the jury deal with it." The district court later asked Muller if he was drinking or under the influence of drugs at the time he left the voicemail, to which Muller responded that he was not. After Muller denied saying during his post-arrest interview that he would be frightened to receive the voicemail, the prosecutor pushed back. The district court instructed the prosecutor to stop and "wrap this up, please. We know what he said, we've heard these excuses, we've heard his version of the facts. Let's let the jury make up their mind, okay?" Finally, when the prosecutor asked Muller to explain his earlier apology for his "offensive language," Muller stated that his expletives were offensive. The district court asked: "Well, telling people you're going to kill them, that could be considered offensive, too, couldn't it?" Muller answered, "I don't believe I ever said I'm going to kill you." The court responded that "maybe we do need to hear the voice message. The voice message we heard today, you admitted that you gave that, didn't you?" Muller acknowledged that he did.

The jury returned a guilty verdict for transmitting a threat by interstate communication, in violation of 18 U.S.C. § 875(c), and retaliation against a federal official, in violation of 18 U.S.C. § 115(a)(1)(B). The district court sentenced Muller to concurrent nine-month prison terms and two-year terms of supervised release. Muller timely appealed.

No. 25-10429

## II.

Muller argues that his words did not constitute a "true threat" because they were conditional and merely expressed political dissent. We review the sufficiency of the evidence *de novo* but remain deferential to the verdict, "ascertaining whether a rational jury could have found the essential elements of the offense, including the threat, proven beyond a reasonable doubt." *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995).

Muller relies primarily on *Watts v. United States*, 394 U.S. 705 (1969), to argue that his words were not a true threat because they were conditioned on the FBI stealing the election from President Trump again. But the context and content of Muller's words are different those in *Watts*. Muller's words were more than "political hyperbole" made as an offhand comment during a political rally. *Id.* at 708; *see United States v. Jubert*, 139 F.4th 484, 491 (5th Cir. 2025) (declining to follow *Watts* because the statement was "political hyperbole, made offhand in protest of government policy"). Muller repeatedly threatened harm specifically and directly to Agent Wilson and his family, and Agent Wilson took immediate security measures to protect his family and investigate the caller. *Daughenbaugh*, 49 F.3d at 174 (declining to apply *Watts* when statements were made in a private letter and finding that the reaction of the recipient was probative to whether statements were a true threat). That Muller's threats were accompanied by political rhetoric "furnishes no constitutional shield." *Id.* Therefore, a rational jury could have found Muller's statements constitute a true threat.

## III.

Muller next argues that the jury was improperly instructed on the mental state required to make a "true threat." The parties dispute whether a plain error or manifest injustice standard of review applies. But because

4

No. 25-10429

Muller cannot satisfy either standard, we review for plain error without deciding which standard is correct.

A defendant has the requisite mental state of making a true threat if he "transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 575 U.S. 723, 740 (2015). Here, the jury was instructed that Muller may be found guilty if he (1) "knowingly sent a message in interstate commerce containing a true threat to kidnap any person or injure the person of another" and (2) "sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat." Because the jury instruction aligns with the standard articulated by the Supreme Court in *Elonis*, Muller fails to show plain error.

IV.

Muller contends that he was denied a fair trial because of the district court's questions and interjections during his testimony. We review for plain error because he failed to object. *United States v. Kirchner*, 161 F.4th 266, 272–73 (5th Cir. 2025).

The "Due Process Clause guarantees that criminal defendants receive a fair trial in a fair tribunal." *Id.* at 273 (internal quotations marks and citation omitted). "Trial judges have considerable latitude over the tone and tempo of a trial, and a judge may elicit further information from a witness if he believes it would benefit the jury." *United States v. Achobe*, 560 F.3d 259, 271–72 (5th Cir. 2008) (internal quotation marks and citation omitted); *see also* FED. R. EVID. 614(b) ("The court may examine a witness regardless of who calls the witness."). The district court violates the Constitution when, "viewed as a whole," its actions "amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *Achobe*, 560 F.3d at 272 (internal quotation marks

and citation omitted). However, "[e]ven inadvisable questions—or those that clearly helped the prosecution—do not necessarily violate the Constitution." *Kirchner*, 161 F.4th at 273–74 (internal quotation marks and citation omitted).

Considering the totality of circumstances, the district court did not plainly err in its questions and comments. *See United States v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998) (stating that a district court errs when the cumulative effect of its comments is "substantial" and "prejudice[s] the defendant's case" (citation omitted)). The district court attempted to move the trial along by cutting off the prosecution's cross-examination, and it elicited information from Muller that could have benefitted the jury. While Muller's mental state was disputed, the district court did not undermine his credibility. *See id.* at 702–03 ("When the jury's evaluation of witnesses' credibility is likely to determine the outcome of a case, questions a judge asks those witnesses implicating their credibility assume heightened importance."). The district court repeatedly stated that Muller's credibility was for the jury to decide and correctly commented only that Muller admitted to leaving the voicemail, without commenting on whether Muller intended to threaten Agent Wilson. Further, the district court gave curative instructions multiple times which "operate against a finding of constitutional error." *United States v. Bermea*, 30 F.3d 1539, 1571–72 (5th Cir. 1994). Even if the district court's interventions were inadvisable, they did not "clearly help[] the prosecution," so there is no plain error. *United States v. Sanchez*, 325 F.3d 600, 607 (5th Cir. 2003). And even if the district court erred in its comments, no error affected Muller's substantial rights because the district court's comments were outweighed by the evidence against Muller. *See Kirchner*, 161 F.4th at 275–76. The jury heard Muller admit that he would have been frightened to receive the voicemail and then deny saying so. A

No. 25-10429

reasonable jury hearing Muller's conflicting testimony could have found him not credible, so Muller fails to show plain error.

## V.

Finally, Muller challenges two aspects of the jury selection process. First, he argues that the district court erroneously struck Juror 27 for cause. The district court did not abuse its discretion in striking Juror 27 for cause without additional questioning. Nor did Muller show that the seated jurors were not impartial, as is required for reversal. *United States v. Whitfield*, 590 F.3d 325, 360 (5th Cir. 2009). Second, Muller argues that the district court allowed the parties to use their alternate-only peremptory challenges against the combined pool of main and alternate jurors in violation of Federal Rule of Criminal Procedure 24(c)(4). Muller fails to show any plain error because as he admits, on this record "it is impossible to say with certainty" whether an alternate-only peremptory strike was used against the main pool of jurors.

\* \* \*

AFFIRMED.