United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 20, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

05-41027

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CRYSTAL CHARLENE CANTWELL,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

BENAVIDES, Circuit Judge:

Crystal Charlene Cantwell was convicted of one count of conspiracy to manufacture methamphetamine and one count of aiding and abetting the possession of pseudoephedrine with the intent to manufacture methamphetamine. She now appeals her conviction, arguing insufficiency of the evidence and ineffective assistance of counsel at trial. The government contends that her appeal is untimely because Cantwell failed to file her notice of appeal within ten days of entry of the judgment. We reject the government's argument and consider the appeal to be timely filed.

Nevertheless, we find that there was sufficient evidence to support Cantwell's conviction, and we therefore AFFIRM. We also find that the record is not sufficiently developed for this court to consider Cantwell's ineffective assistance claim. She should present that issue to the district court in the first instance.

<u>I. TIMELINESS OF THIS APPEAL</u>

As a preliminary matter, we note that Ms. Cantwell's notice of appeal was timely filed. A criminal defendant ordinarily has ten days from the entry of the judgment to file a notice of appeal. FED. R. APP. P. 4(b)(1)(A). A district court may extend the time to file by no more than 30 days. FED. R. APP. P. 4(b)(4); <u>United States v. Awalt</u>, 728 F.2d 704, 705 (5th Cir. 1984). Ms. Cantwell filed her actual notice of appeal on June 27, 2005, more than 40 days after the entry of judgment in this case. However, Cantwell did file a motion for extension of time during the ten-day period, and such a filing can serve as the functional equivalent of a notice of appeal. See <u>Smith v. Barry</u>, 502 U.S. 244, 248–49 (1992) ("If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal.").

To act as the functional equivalent of a notice of appeal, the motion must set forth (1) the party taking the appeal, (2) the judgment being appealed from, and (3) the court to which the party is appealing. See FED. R. APP. P. 3(c)(1). Cantwell's motion clearly sets forth the parties' names, as well as the date of her

2

underlying judgment. It does not state the court to which she was appealing, but that omission is irrelevant because this is the only court to which she could appeal. See McLemore v. Landry, 898 F.2d 996, 999 (5th Cir. 1990) (finding third element met where only one avenue of appeal exists). Therefore, keeping in mind that Rule 3 must be liberally construed in favor of appeals, Smith, 502 U.S. at 248, we have no hesitation in finding that Cantwell's motion for extension of time was sufficient notice to the government of her intent to appeal, and we therefore exercise jurisdiction.

## II. FACTS AND STANDARD OF REVIEW

On January 8, 2004, at about 11:00 p.m., Officer Ricardo Adame stopped a silver Ford Taurus for speeding. Inside the car were Crystal Charlene Cantwell, William Travis Reagan, and Emily Rice. During the stop, Officer Adame noticed several empty boxes of Actifed cold medicine on the floor of the car. The officer knew that Actifed, which contains pseudoephedrine, could be used to manufacture methamphetamine. A later search of the car revealed a total of 1,296 Actifed tablets and several lithium batteries. Lithium is also a key ingredient in methamphetamine.

Cantwell was indicted on one count of conspiracy to manufacture methamphetamine (Count One) and one count of aiding and abetting the possession of 1,296 pseudoephedrine tablets with the intent to manufacture methamphetamine (Count Two). A jury convicted her of both counts, and the district court sentenced her to concurrent prison terms of 76 months.

3

At trial, the government relied heavily on the testimony of Emily Rice. She testified that she was "drug buddies" with Mr. Reagan for a period of about eight months, during which time they procured and used drugs together. Specifically, she explained that she "would give [ingredients] to [Reagan] and he would take them to somebody else and get drugs for that." She also stated that "he would get ingredients from me and other people and he would take them out to people that were manufacturing." She did not know Cantwell very well, but said that Cantwell was Reagan's friend.

According to Rice, on January 8, the three companions drove from Victoria, Texas to Corpus Christi. There they visited several stores, where they stole the Actifed and batteries. On the way back to Victoria, while Cantwell was driving, Rice took the pills out of the boxes, bundled them up, and handed them up to Reagan for safekeeping. The plan was for Reagan to take the drugs to an unnamed person and exchange them for drugs. On the ride back to Victoria, however, Officer Adame pulled the car over and arrested the three occupants.

Cantwell now challenges her conviction on the grounds that it is not supported by sufficient evidence. When considering a sufficiency challenge, we apply the rational jury standard, under which we must "decide whether, viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." United States v.

4

<u>Villarreal</u>, 324 F. 3d 319, 322 (5th Cir. 2003).

III. SUFFICIENCY OF THE EVIDENCE

A.  CONSPIRACY TO MANUFACTURE METHAMPHETAMINE

To convict Cantwell under 21 U.S.C. § 846, the government must prove "(1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy." <u>United States v. Stone</u>, 960 F.2d 426, 430 (5th Cir. 1992).

The evidence at trial was certainly sufficient to support a finding that Rice and Reagan conspired to manufacture methamphetamine. Rice testified that she and Reagan had been working together to procure drugs for their personal use for a period of about eight months. She would acquire ingredients and give them to Reagan, who would take them to manufacturers in exchange for finished drugs. From this evidence a juror could reasonably conclude that Rice and Reagan were engaged in a conspiracy to manufacture methamphetamine.

Similarly, the evidence was sufficient for a rational juror to conclude that Cantwell knowingly and intentionally joined the conspiracy. Cantwell was found in joint possession of 1,296 pseudoephedrine tablets and several lithium batteries. Ms. Rice testified that she and Cantwell stole the tablets and batteries together, and that the plan was to have Reagan exchange the ingredients for drugs as he had done previously. All three

participants discussed this plan ahead of time. Afterwards, while Cantwell drove them back to Victoria, Rice removed the goods from their packages, bundled them, and handed them up to Reagan, who was sitting next to Cantwell.

These facts allow for the inference that Cantwell knew of and participated in the conspiracy to violate the narcotics laws. Cf United States v. Michelena-Orovio, 719 F.2d 738, 752 (5th Cir. 1983) (finding that defendant's knowledge and joinder in conspiracy to distribute marijuana could be inferred where quantity was far too large for private consumption).[1] Viewing all the evidence in

---

[1]Cantwell points to other testimony that suggests that she was acting independently of Rice and Reagan. Specifically, she notes that Rice testified that Reagan offered to buy Cantwell's stolen pseudoephedrine from her and she refused. Cantwell argues that this is an indication that she was acting independently of the other two participants, and not engaged in the conspiracy. However, Cantwell's actions indicate otherwise. For instance, she made no effort to keep her portion of the stolen goods separate from the rest; she merely dumped them out into the backseat of the car, where Rice bundled them, together with the pills that Rice had stolen, and handed them to Reagan. Reagan then kept the pills and the batteries together in a black bag under his feet in the front seat. Officer Adame testified that he found the majority of the pills in that black bag, along with a few others that were on the floor by Reagan's feet. Officer Adame did not report finding any contraband at all in Cantwell's tan purse, which is what she had used to steal the pills in the first place. These facts belie the notion that Cantwell was acting independently of Rice and Reagan and attempting to keep her share of the pills for herself. A more plausible reading of Rice's testimony is that Reagan was simply offering to buy Cantwell out of the conspiracy once she had stolen the pills, so that he could take her share of the resulting methamphetamine. In that light, her refusal of Reagan's offer would demonstrate a desire to remain a part of the conspiracy, not to act independent of it. Of course, we need not speculate as to precisely how the jury interpreted the testimony. Our reading convinces us that there was sufficient evidence in the record for a rational juror to conclude that the defendant was guilty. United

the light most favorable to the verdict, we believe that a rational juror could have found that all the elements of the offense were proven beyond a reasonable doubt.  <u>Villarreal</u>, 324 F. 3d at 322 (5th Cir. 2003).

## B.  AIDING AND ABETTING POSSESSION WITH INTENT TO MANUFACTURE

To prove possession with intent to manufacture, the Government was required to prove (1) that Cantwell knowingly possessed pseudoephedrine, (2) that she possessed it with the intent to manufacture a controlled substance, and (3) that the substance was pseudoephedrine.  21 U.S.C. § 841(c)(1).  Cantwell contests only the second element.

Even if Cantwell did not intend to manufacture drugs herself, evidence that she knew of and intended "to further the goals of a manufacturing operation" is sufficient for a conviction under 21 U.S.C. § 841(c)(1).  <u>United States v. Leed</u>, 981 F.2d 202, 206 (5th Cir. 1993).  We find that the evidence set forth above was also sufficient to allow a reasonable juror to infer that Cantwell knew of the plan to manufacture drugs, and that she intended to further that operation by her actions on January 8.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Cantwell also raises an ineffective assistance of counsel claim on this, her direct appeal.  "[T]he general rule in this circuit is that a claim for ineffective assistance of counsel

States v. Villarreal, 324 F. 3d 319, 322 (5th Cir. 2003).

7

cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." <u>United States v. Pierce</u>, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007 (1992) (citations omitted). Since Cantwell's ineffective assistance claim has not been presented to the district court, we decline to review it now. This in no way prejudices Cantwell's claim should she choose to raise it in a later postconviction proceeding.

## V. CONCLUSION

For the reasons set forth above, we AFFIRM Cantwell's conviction on both counts, and decline to review her ineffective assistance claim at this time.