# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 7, 2011

No. 09-10046

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JIMMIE LEE PRESLEY

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
No. 3:07–cr–00338–P–1

Before REAVLEY, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

This appeal arises out of Defendant-Appellant Jimmie Lee Presley's ("Presley") guilty plea to one count of conspiracy to commit bank fraud. Because we find no reversible error, we AFFIRM.

## I.

While represented by counsel and pursuant to an agreement with the Government, Presley pleaded guilty to one count of conspiracy to commit bank fraud. The plea agreement contained a factual resume. While foreclosing his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ability to mount a direct challenge to his guilty plea, the plea agreement expressly reserved to Presley the right to bring a claim of ineffective assistance of counsel.

Presley admitted to the contents of the factual resume, which stated that Presley recruited co-conspirators; instructed them to the workings of the fraudulent scheme; made false identification documents; forged checks; and, drove co-conspirators to banks where, presumably, they cashed the checks. Presley also admitted the loss amount to be somewhere between $200,000 and $400,000. On March 28, 2008, Presley executed the plea agreement. On April 16, 2008, the district court held a rearraignment hearing ("rearraignment hearing").

At the rearraignment hearing, in open court, Presley again admitted to the contents of the factual resume, acknowledged that he signed it, understood all of the information contained within it, and attested to its truth. Also at the rearraignment hearing, Presley ratified that he made the plea knowingly, that it was voluntary, and that he was not coerced into pleading guilty. A presentence report ("PSR") was prepared and disclosed in June 2008, pursuant to the district court's scheduling order. Factoring in the loss amount, Presley's admitted leadership role, and because the scheme involved the creation of false documents, the PSR recommended a Sentencing Guidelines range of 77-96 months of imprisonment. This range also factored into consideration Presley's acceptance of responsibility.

In July 2008, through his counsel Anthony Lyons, Presley moved to withdraw his guilty plea and Lyons moved to withdraw as counsel. The Government opposed Presley's motion to withdraw his plea, but deferred to the district court as to Lyons's motion to withdraw as counsel.

The district court held a hearing on both motions on September 3, 2008. At the September 2008 hearing, the district court inquired of Presley as to the

motions.  Presley indicated that he wished to obtain a new lawyer, but wanted to keep his guilty plea "as it is."  The district court relieved Lyons of his representation and, pursuant to Presley's desire to abide by his guilty plea, denied his motion to withdraw the guilty plea as moot.

After the district court relieved Lyons of his representation, yet still during the September 2008 hearing, Lyons addressed the district court to "get at least one issue on the record."  Lyons informed the court that Presley wrote him suggesting his desire to withdraw the plea and accusing Lyons of permitting Presley to sign a false factual resume.  Lyons  explained that he discussed the Government's allegation and the factual resume with Presley and did not encourage Presley to sign a document Presley believed to be untrue.  Lyons asked the district court to ask Presley whether he believed that the factual resume was untrue "because it was Lyons's testimony that Presley freely and voluntarily, with knowledge of what he was doing, signed that factual resume."

The district court questioned Presley regarding Lyons's statement.  Presley responded that he signed the factual resume with the understanding that Lyons spoke to the judge who reported to Lyons that the judge would "throw the book at" Presley, were Presley not to assent to the terms of the plea.  Lyons denied this.  Lyons indicated, however, that he informed Presley of the gravity of the Government's evidence and the likelihood of a conviction should Presley opt to proceed to trial.  Lyons also explained his opinion to the district court that the plea was favorable to Presley, especially given the "lateness or the tardiness by which [Presley] decided to plead guilty."  The district court told Presley that Lyons did not discuss Presley's situation with the court, and that the district court never told Lyons that it would "throw the book" at Presley should Presley choose not to assent to the plea agreement.

Lyons requested once more that the district court question Presley as to whether Presley believed the factual resume was true or not.  Presley indicated

3

that he did not recruit others for the conspiracy nor did he make identification cards, as the factual resume alleged. When asked by the district court as to why he signed a purportedly false factual resume, Presley restated his belief that the district court would "throw the book at him," as Lyons allegedly warned. When asked by the district court as to whether he recalled pleading guilty at the rearraignment hearing, under oath, absent duress, and without anyone having made promises to him, Presley indicated doing so but that he was frightened at the time.

Lyons stated that the Government threatened to supersede the indictment and charge Presley with additional crimes should he choose to withdraw his guilty plea. Lyons reiterated his request that the district court permit Presley to withdraw his guilty plea if Presley alleged that the factual resume was untrue. Presley indicated that the factual resume contained false information. The district court explained that this would be a matter Presley would need to discuss with his new attorney. A new attorney, Sindu Stovall, was appointed to represent Presley.

In November 2008, two months after the appointment of Stovall, Presley sought to have Stovall withdraw as counsel. At this time, Presley also reinitiated his motion to withdraw the guilty plea. The district court held a hearing pursuant to Presley's request. At the November 2008 hearing, Presley reiterated concern regarding the amount of loss calculated in the PSR, and the leader/organizing sentencing enhancement. Stovall explained that they were issues for sentencing and that she was working on those issues. Presley then decided he did not wish to withdraw his guilty plea. After clarifying confusion from Presley's applications for the withdrawal of his plea and the withdrawal of counsel, and his subsequent retreats from those applications, the district court denied both of Presley's motions. At the conclusion of the November 2008

hearing, while represented by Stovall, Presley chose not to withdraw from his guilty plea.

In January 2009, the case proceeded to sentencing. At the beginning of the sentencing hearing, Stovall notified the district court of Presley's desire to renew once more his wish to withdraw his guilty plea. The district court reminded Presley of its two prior conversations with Presley, on the record, whereby on both occasions he maintained a desire to persist in his guilty plea. Presley indicated that though he was guilty of the underlying offense, he claimed he was not a leader, did not cause as great a loss as the PSR alleged, and that he did not produce fake identification cards. Presley indicated that in his opinion, Stovall inadequately addressed those issues. Stovall indicated that she discussed the plea agreement with Presley including the factual resume, but there was a conflict because Presley might not have either "realized or understood what he was doing." Presley indicated that he was unaware of what he was signing when he signed the factual resume—thus, it was not voluntary.

For her part, Stovall indicated she could not change the fact that Presley admitted to the contents of the factual resume. The Government at all times opposed the motion to withdraw the guilty plea. The district court denied Presley's application. It reasoned that the court had on two prior occasions considered the issues raised by Presley and that, nonetheless, it did not accept that Presley did not know the contents of the factual resume when he admitted to it. Moreover, the district court stated the factual resume was read in open court and Presley did not voice objections to it at that time.

Thereafter, and during the same January 2009 sentencing hearing, Presley testified. He explained that he received only $25,000 from the scheme, though he acknowledged that the banks lost more than $200,000. He disavowed that he was the ringleader of the scheme, and indicated that he did not recruit others to participate, did not devise the scheme, and did not create fake

No. 09-10046

identification cards. He claimed that he only once drove another person to the bank to cash a check.

The district court concluded that Presley committed perjury when he denied his role in the offense, explaining that his testimony did not comport with the statements of other co-conspirators described in the PSR. The district court next found that Presley was responsible not only for the entire amount of the loss he caused, but also that which he received. The district court also found that Presley's criminal history score was underrepresented in the PSR because it did not account for certain other prior convictions for burglary and attempted burglary, and because it did not consider his other criminal activity. All told, the district court sentenced Presley to a 120-month prison sentence, a five-year term of supervised release, and restitution. Through counsel, Presley appealed.

Thereafter, Stovall moved to withdraw as counsel. After initially denying her application, the district court permitted Stovall's withdrawal and appointed a federal public defender to represent Presley. He, too, moved to withdraw because he could discern no nonfrivolous basis for appeal, to which Presley filed two responses. Presley filed a motion to strike and substitute one of his responses following the public defender's motion for withdrawal. He also filed a motion for release pending appeal. This court denied the motion to withdraw without prejudice, explaining that the appeal raised an arguable issue of whether Presley was denied the right to counsel at a critical stage of the proceedings. It carried with the case Presley's motion to strike and for release pending appeal.

## II.

### A.

"The question of whether someone was rendered ineffective assistance of counsel is a mixed question of law and fact that this court reviews de novo." *United States v. Harris*, 408 F.3d 186, 186 (5th Cir. 2005) (citation omitted).

No. 09-10046

### B.

The Sixth Amendment entitles a criminal defendant to assistance of counsel at all critical stages of proceedings. *United States v. Cronic*, 466 U.S. 648, 659 (1984). Put differently, counsel is afforded where a defendant's substantial rights may be affected. *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991). While neither the Supreme Court nor this court has delineated the stages at which the presence of counsel is necessary, the Supreme Court has provided some meaningful abstract standards to assist in making this determination: the denial of counsel must be significant enough to render the adversary process unreliable and the "surrounding circumstances" must justify the presumption that the defendant did not receive the effective assistance of counsel. *United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000).

This court turns to the Supreme Court's two-pronged test in *Strickland v. Washington,* 466 U.S. 668 (1984), to assess whether a defendant has been rendered ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. Put differently, Presley must show that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### C.

#### 1.

The issue before the court is not whether the district court erred in denying Presley's motion to withdraw his guilty plea. Rather, the issue is whether Presley's rights under the Constitution were violated when, after Lyons withdrew as counsel at the September 2008 hearing, he was denied effective

assistance of counsel in the consideration of his motion to withdraw his guilty plea.[1]

Before turning to the merits of Presley's argument, there remains the threshold inquiry of whether Presley was entitled to counsel at the hearing on his motion to withdraw his guilty plea. Neither the Supreme Court nor this court have spoken directly to the requirement of counsel at a motion to withdrawal hearing—its pronouncement on the matter comes no closer than requiring counsel at critical stages of criminal proceedings. *See generally Cronic*, 466 U.S. at 659.

Presley addresses this question in his brief on the merits, and urges that this court hold he was due counsel at his motion to withdraw hearing. The Government does not. The Government argues that the question is not explicitly before the court because Presley was afforded a hearing on his motion to withdraw, with the presence of counsel in November 2008.

Without explicitly holding so, we assume *arguendo* that Presley was entitled to counsel at the hearing on his motion to withdraw his guilty plea. Our assumption is informed by a survey of our sister circuits. *See Forbes v. United States,* 574 F.3d 101, 106 (2d Cir. 2009)("A motion to withdraw a guilty plea is a critical state of a criminal proceeding."); *United States v. Segarra-Rivera*, 473 F.3d 381, 384 (1st Cir. 2007)("The entry of a guilty plea is one such critical stage, and a plea-withdrawal hearing is another."); *United States v. Garrett*, 90 F.3d 210, 212 (7th Cir. 1996) ("A defendant is entitled to counsel during all critical stages of the criminal proceedings, including a hearing on defendant's motion to withdraw a guilty plea."); *United States v. Crowley*, 529 F.2d 1066, 1069 (3d Cir.

---

[1] It appears to the court that Presley's claim of ineffective assistance of counsel is ripe for consideration because the record was sufficiently developed in the district court. *United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006). Pursuant to the terms of Presley's written plea agreement and *Cantwell*, we need not anticipate a motion under 28 U.S.C. § 2255.

1976) ("At least absent unusual circumstances, a hearing on a motion to withdraw a guilty plea is sufficiently important in a federal criminal prosecution that the Sixth Amendment requires the presence of counsel"); *United States v. Joslin*, 434 F.2d 526, 529–30 (D.C. Cir. 1970) ("Since the proceeding . . . was an integral part of the criminal prosecution, appellant was, of course, entitled to counsel on his request to alter his guilty pleas.").

**2.**

With our assumption in mind, we consider now the merits of Presley's ineffective assistance of counsel argument. Presley contends that after Lyons was dismissed at the September 2008 hearing, Presley's colloquy with the district court, without the benefit of counsel, violated his constitutional rights as this deprivation occurred at an arguably critical stage of the criminal proceedings. He maintains that the September 2008 hearing "indelibly colored the district court's assessment of" him. He criticizes the conduct of both Lyons and Stovall, particularly taking exception with Lyons at the September 2008 hearing.

Meanwhile, the Government argues that even assuming that Presley was denied the right to counsel while the court considered his motion to withdraw his guilty plea, he had "another opportunity to press for the withdrawal of his guilty plea while represented by counsel" at the November 2008 hearing when he was represented by Stovall. We find the Government's argument persuasive.

Presley argues that the exchange from the September 2008 hearing amongst the district court, Lyons, and Presley caused him to make self-implicating statements. That is simply not true. First, after Lyons withdrew, Lyons merely directed the court to question Presley on the narrow question of whether Presley wished to withdraw his plea. Lyons did not add to the perils Presley faced because the question of Presley's guilt was already *fait accompli*, as evidenced by his plea from April 2008. Put differently, Presley's fate was

sealed at the rearraignment hearing. If he wanted to deviate from that hearing, he had every right to. Instead, when prompted by the district court at Lyons's request, Presley indicated he did not wish to proceed with his motion to withdraw the guilty plea.

Presley would have this court believe that the September 2008 hearing contributed—either explicitly or implicitly—to a sentencing enhancement based on his perjury at the January 2009 sentencing hearing. Again, this does not withstand the fact that Presley's actions were of his own making. The record solidly supports a perjury enhancement when comparing his April 2008 rearraignment testimony with his January 2009 version.

Secondly, Lyons's protest that the district court clarify Presley's position on the contents of the factual resume bubbled to the surface only after Presley effectively accused Lyons of suborning perjury by coercing and/or intimidating him to sign a factual resume that contained false information. Moreover, a review of the transcript from the September 2008 hearing reveals that, though the district court had dismissed Lyons from representing Presley, Lyons continued in his advocacy on behalf of Presley by urging the district court to permit Presley to withdraw his guilty plea in the event it contained factually untrue statements, to prevent Presley from admitting to something he did not believe to be an accurate representation of what transpired. On many occasions, Presley was asked by the district court whether he wanted to withdraw his guilty plea and on many occasions, Presley expressly indicated he wished to retain it.

Thirdly, as the Government argues, Presley had the aide of counsel in November 2008 through the assistance of Stovall. On this fact alone, we can find that Presley's averments that he was rendered ineffective assistance of counsel are without merit, much less enough to render the adversary process unreliable. We further find that the surrounding circumstances of this

10

No. 09-10046

case—specifically that Presley, while represented by counsel, was given the opportunity to withdraw his plea later in the proceedings—do not justify the presumption of ineffectiveness of counsel. *See Strickland*, 466 U.S. at 694; *Russell*, 205 F.3d at 771.

Next, Presley's assertion that he was forced into pleading guilty against an abstract and unsubstantiated threat that "the district court would throw the book at him" is unsupported by the record and contradicts his proclamation, in open court, that he was making his guilty plea "freely and voluntarily" and that it was "not the result of force or threats or of promises." In its written plea agreement, the Government required Presley's assent to the factual resume. Furthermore, the district court ensured his plea was knowing, intelligent, and voluntary, as Federal Rule of Criminal Procedure 11 mandates.

Last, but certainly not least, Presley's complaints of ineffective assistance of counsel strike the court as hollow. A review of the record reveals that Presley took no exception with the contents of the factual resume until the PSR was produced and disclosed to him, and the gravity of his potential sentence was made evident. In fact, a comparison of his original PSR with those portions of the factual resume with which Presley would later take exception reveal disagreements with the PSR's loss amount, its designation of Presley as leader/organizer designation of the scheme, and that he created false identification for those involved. A plainly reasonable inference is that Presley's attempts to cherry-pick the factual resume and take exception with certain portions of the PSR evince an attempt to avoid the harshest penalties his admitted-to crimes carry. Had the district court permitted Presley to extract portions of his factual resume in an attempt to avoid certain penalties, it would allow Presley to admit guilt to only those portions of the factual resume which, to him, comported with his concept of what should be an ideal sentence. He effectively seeks the best of both worlds.

No. 09-10046

For these reasons, the sequence of the September 2008 hearings, and a review of the record, does not support Presley's position that his counsel rendered ineffective assistance. Lyons's, and later Stovall's representation was not so deficient so as to render the adversary process unreliable or conclude that the defendant did not receive the effective assistance of counsel. Presley vacillated between adhering to and abandoning his guilty plea and, at the November 2008 hearing, had the opportunity to confront the matter with the presence of counsel. Thus, we conclude his representation did not offend the Supreme Court's two-pronged ineffective assistance of counsel test outlined in *Strickland*.

## D.

This court carried with the case two motions. Presley filed a *pro se* motion for release pending appeal. He also filed a motion to strike and substitute one of his responses following the public defender's motion for withdrawal.

## 1.

This court will deny Presley's *pro se* motion for release pending appeal because this court does not permit hybrid representation and, thus, his motion is unauthorized. *United States v. Ogbonna*, 184 F.3d 447, 449 & n.1 (5th Cir. 1999); 5TH CIR. R. 28.6 ("Unless specifically directed by court order, *pro se* motions, briefs, or other correspondence will not be filed by the party if represented by counsel.").

## 2.

Because of the reasons stated above, and our conclusion herein, this court will deny Presley's motion to strike his response to counsel's motion to withdraw as counsel as moot.

## III.

Because we find Presley was not rendered ineffective assistance of counsel at the September 2008 hearing, we AFFIRM the judgment of the district court.

No. 09-10046

We DENY his motion for release pending bail and DENY his motion to strike as MOOT.

No. 09-10046

E. Grady Jolly, concurring specially,

I concur in the result, but write separately to note that Presley brings a claim for denial of counsel, yet we have treated his claim as one for ineffective assistance of counsel. As we have said, Presley's plea preserved one avenue of appeal: ineffective assistance of counsel. The government, however, does not point out the distinction between a denial of counsel claim and an ineffective assistance of counsel claim, and has waived its right to hold Presley to his word. *United States v. Acquaye*, 452 F.3d 380, 381-82 (5th Cir. 2006). I nonetheless concur in the result, because Presley was not denied counsel at a critical stage of the proceedings; the September 3 hearing was not critical because Presley has already been granted two additional hearings on the same issue.