# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2015

Lyle W. Cayce
Clerk

No. 14-31262
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JAMES R. HUNTER,

Defendant-Appellant

Appeals from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CR-73-11

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant James R. Hunter appeals his conviction and sentence for conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349 and conspiracy to pay and receive kickbacks in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(1) and (2). Hunter contends that (1) the evidence was insufficient to prove that he had the requisite knowledge to be convicted under either statute, (2) the district court abused its discretion

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

when it instructed the jury on willful blindness, and (3) his lawyer rendered ineffective assistance of counsel.

The indictment alleged that Hunter and his co-defendant, Roslyn Dogan, recruited Medicare beneficiaries for placement at Shifa Texas for services that were not medically necessary or were never provided but were billed to Medicare. It further alleged that in return, Hoor Naz Jafri (Naz Jafri) and other co-conspirators paid Hunter kickbacks and that he in turn paid kickbacks to Medicare beneficiaries.

To convict Hunter of conspiring to commit health care fraud, the government had to prove that (1) Hunter and one or more other persons agreed to commit health care fraud; (2) Hunter knew the unlawful purpose of the agreement; and (3) Hunter joined in the agreement willfully, i.e., with the intent to further the unlawful purpose. *See United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2319 (2014); *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012). To prove that Hunter conspired to pay and receive kickbacks, the government had to prove (1) Hunter and one or more other persons agreed to pursue an unlawful objective; (2) Hunter had knowledge of the unlawful objective and voluntarily agreed to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the its objective. *See Njoku*, 737 F.3d at 63-64.

Hunter has challenged only the knowledge elements of the statutes under which he was convicted, so we will not consider whether the evidence supported the other elements. *See* FED. R. APP. P. 28(a)(8); *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010). Hunter's knowledge of Shifa Texas's unlawful objective to engage in health care fraud and the unlawful nature of the agreement that he had with Shifa Texas to further that objective

could be proved by inference and circumstantial evidence.  *See Njoku*, 737 F.3d at 63-66; *United States v. Umawa Oke Imo*, 739 F.3d 226, 235 (5th Cir. 2014).

We conclude that the following evidence presented at trial was sufficient to prove that Hunter had the requisite knowledge for conspiracy to commit health care fraud and conspiracy to pay and receive kickbacks.  The facilities at issue, Shifa Community Mental Health Center (Shifa Baton Rouge), Serenity Community Mental Health Center (Serenity), and Shifa Community Mental Health Center of Texas (Shifa Texas), were owned by, among others, Naz Jafri and Dogan and offered "Partial Hospitalization Programs" (PHPs). PHPs are intense treatment programs that provide patients less than 24-hour outpatient psychiatric care at a hospital or at a community mental health center and are covered by Medicare Part B.  To be eligible to participate in a PHP, a patient must be under the care of a physician, have an acute onset of his mental disorder or be decompensated, and must be cognitively able to participate.  Medicare guidelines specify that PHP patients must receive therapeutic service for at least 20 hours per week and at least four days per week.

At trial, Hunter's co-conspirators testified that (1) Shifa Texas fraudulently billed Medicare for psychiatric services that were never provided; (2) Hunter's co-defendant, Julian Kimble, employed Hunter to deliver patients to Shifa Texas by van who did not have a mental illness; (3) Kimble and Hunter then paid patients for being transported to Shifa Texas, with Hunter telling patients what to say to ensure their admission; and (4) when he was hired by Kimble, Hunter knew that he was to be paid based on the number of patients he brought to Shifa Texas.  Although Medicare allows facilities to advertise their services, they may not pay patients to attend a PHP program.

No. 14-31262

After Kimble was investigated for health care fraud, Hunter met with Naz Jafri and agreed to continue the work that he and Kimble had been doing. He also negotiated to be paid in cash based on the number of patients that he transported to Shifa Texas. Although he was not employed by Shifa Texas, Naz Jafri paid Hunter $5000 a week to bring patients to Shifa Texas and paid him additional sums, depending on how many patients he brought. Documentary and testimonial evidence showed that Hunter paid the patients he brought to Shifa Texas with cash supplied by Shifa Texas.

Hunter was a visible presence at Shifa Texas, appearing weekly, looking in on chaotic group sessions, and speaking daily by phone to Erika Williams, the facility's office manager. Following a federal investigation into Shifa Baton Rouge, Hunter met with Naz Jafri and other co-conspirators in Baton Rouge, telling them that he would lie if questioned and that he had instructed patients to do likewise.

This testimony, viewed in the light most favorable to the government, permitted the jury to infer that Hunter had the requisite knowledge that the agreement he had with Shifa Texas stemmed from an underlying scheme to obtain money from Medicare by false pretenses. *See Njoku*, 737 F.3d at 63; *see also United States v. Willett*, 751 F.3d 335, 341 (5th Cir. 2014). It also permitted the jury to infer that Hunter had the requisite knowledge to convict him of the kickback offenses with which he was charged. *See Njoku*, 737 F.3d at 64-65.

Hunter also argues that the district court misstated the law when it issued a willful blindness instruction that tracked the Fifth Circuit Pattern Instruction on willful blindness because it informed the jury that it could use a lesser standard of proof to find that he knew of the illegal nature of his conduct. He further argues that the instruction was an abuse of discretion

4

because there was no evidence that he knew that being paid cash for bringing patients to Shifa Texas was an illegal kickback, so that there was no evidence to support a finding that he turned a blind eye to the illegality of the weekly payments in cash.

We have held that the Fifth Circuit Pattern Instruction on willful blindness is a correct statement of the law as enunciated by the Supreme Court in *Global-Tech Appliances v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2071 (2011). *United States v. Brooks*, 681 F.3d 678, 702 (5th Cir. 2012). This forecloses Hunter's contention that the court's jury instruction was a misstatement of the law. *See United States v. Kuhrt*, 788 F.3d 403, 416 n.4 (5th Cir. 2015).

We review preserved error in jury instructions under an abuse of discretion standard, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the government. *Kuhrt*, 788 F.3d at 413. For a willful blindness jury instruction to be warranted, the defendant must (1) subjectively believe that there is a high probability that a fact exists, and (2) take deliberate actions to avoid learning of that fact. *Global-Tech*, 131 S. Ct. at 2070. We have held that giving that instruction is proper when a defendant denies guilty knowledge, but the proof at trial supports a reasonable inference of deliberate ignorance. *See, e.g., United States v. St. Junius*, 739 F.3d 193, 205 (5th Cir. 2013). Moreover, even if the district court errs when it gives a deliberate ignorance instruction, any such error is harmless when there is substantial evidence of actual knowledge. *Kuhrt*, 788 F.3d at 417.

We conclude that the trial testimony, viewed in favor of the government, permits the inference that Hunter had subjective knowledge that he was involved in a fraudulent health care scheme and that he acted deliberately to

avoid knowing of the precise nature of the Medicare violations, such that the instruction was warranted.  Furthermore, even assuming *arguendo* that the district court erred in giving that instruction, trial testimony established that Hunter had actual knowledge making any such error harmless.  *See St. Junius*, 739 F.3d at 205-06 & n.15; *see also Kuhrt*, 788 F. 3d at 417-18.  Testimony showed that Hunter was a willing participant in the health care fraud conspiracy at Shifa Texas and was associated with others at the facility who knew that bringing able patients to the facility was wrong.  Hunter also knew that Kimble quit transporting patients after he was investigated by federal officers for health care fraud, yet Hunter took over that activity and agreed to lie to federal officials after Shifa Baton Rouge was investigated for health care fraud and instructed patients to do likewise.

Hunter's final contention is that his trial counsel rendered ineffective assistance on various grounds.  We decline to review his claim on direct appeal because the record is insufficiently developed and that claim was not raised before the district court.  *See United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008); *United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006).

AFFIRMED.