# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30151
_____

Kendrick Christmas,

*Petitioner—Appellant*,

*versus*

Tim Hooper, *Warden, Louisiana State Penitentiary*,

*Respondent—Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-691

_____

Before Elrod, *Chief Judge*, and Willett and Duncan, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

In 2011, Kendrick Christmas, Louisiana prisoner #585115, received a life sentence for second-degree murder and two fifty-year sentences for attempted murder. All three sentences were set to run concurrently. In 2018, Christmas, proceeding *pro se*, petitioned for federal habeas relief under 28 U.S.C. § 2254, alleging various constitutional violations at his trial and on appeal. On March 31, 2022, the district court denied his petition as untimely and granted a certificate of appealability (COA) on the timeliness issue.

No. 23-30151

Christmas had until May 2, 2022, to appeal.[1] On May 5, 2022, we received a letter from Christmas requesting a "return date" and an extension to file a "COA brief." The letter was dated May 2 but postmarked May 3. Recognizing that the postmark date might not match the date that Christmas placed his letter in the prison mail system, we remanded for factfinding by the district court. The district court found that Christmas placed his letter in the mail on May 2, 2022.

Because Christmas's letter requesting a "return date" and an extension to file a "COA brief" suffices as notice of appeal and that letter was timely, we have jurisdiction to address the timeliness of Christmas's habeas petition. We AFFIRM the district court's denial of habeas relief.

I

Christmas contends that his letter is a timely filed notice of appeal. Hooper does not respond. But because a "timely filed notice of appeal in a civil case is 'mandatory and jurisdictional,'"[2] we must reach the issue anyway.

We begin by asking whether Christmas's letter suffices as a notice of appeal. "Federal Rule of Appellate Procedure 3 makes clear that formality and title are not dispositive of whether a document is a notice of appeal."[3] A document acts as the functional equivalent of a notice of appeal so long as it "evinces an intent to appeal and contains the identity of the party or parties

---

[1] *See* Fed. R. App. P. 4(a)(1)(A), 26(a)(1)(C).

[2] *Bailey v. Cain*, 609 F.3d 763, 765 (5th Cir. 2010) (citation omitted).

[3] *Id.* (citation omitted); *see also Smith v. Barry*, 502 U.S. 244, 248 (1992).

appealing, the judgment or order appealed from, and the court to which the appeal is to be taken."[4]

We start with the first requirement—whether Christmas's letter conveys an intent to appeal. We look to the substance of the letter.[5] The subject line reads: "Plea for a Return date and in accordance therewith, an Extension of time in which to file COA brief." Requesting an extension of time to file a COA motion is not the functional equivalent of a notice of appeal, at least according to our unpublished caselaw.[6] But the body of Christmas's letter goes beyond merely asking for an extension. Christmas requests a "notice of a return date"—which he seems to define as the date by which he must submit to us a "COA application and Memorandum of Law."[7] And he says that he "aim[s] to meet all required timeliness demands of [our] Court."[8] Christmas's request for a "return date" and his statement that he intends to comply with this court's filing deadlines distinguish his letter from an ordinary request for an extension and convey the requisite unequivocal intent to appeal.

---

[4] *Bailey*, 609 F.3d at 765–66.

[5] *Id.* at 765.

[6] *Neslo v. Cain*, 220 F.3d 588, 2000 WL 960660, at *1 (5th Cir. 2000) (unpublished) (per curiam); *Radcliffe v. Stephens*, 616 F. App'x 181, 182 (5th Cir. 2015). *But cf. Bailey*, 609 F.3d at 766–67 (concluding that even if the motion for an extension of time to file a COA motion *could* be a notice of appeal, that particular motion "would come up short").

[7] *Cf. Stevens v. Heard*, 674 F.2d 320, 322 (5th Cir. 1982) (addressing the filing of a certificate of probable cause, the precursor to a COA request, and concluding that a motion requesting the certificate was a notice of appeal).

[8] *Cf. United States v. Cantwell*, 470 F.3d 1087, 1088–89 (5th Cir. 2006) (holding that even a motion for extension of time to appeal can be a notice of appeal when it does not equivocate about whether an appeal will be taken and satisfies Rule 3's other requirements).

No. 23-30151

Christmas's letter satisfies Rule 3's other requirements. It identifies the party appealing, the judgment being appealed, and the court—us—to which the appeal is to be taken.[9] Christmas's letter is thus the functional equivalent of a notice of appeal.[10]

## II

We now turn to whether Christmas's notice of appeal was timely filed. On remand, the district court found that Christmas placed his letter in the prison mail system on May 2, 2022—the deadline for his appeal.[11] He addressed his letter to us, not the district court, and we received it on May 5, 2022.

Whether Christmas's notice was timely filed implicates two Federal Rules of Appellate Procedure—Rule 4(c)(1), the prison mailbox rule, and Rule 4(d), the mistaken filing rule. Rule 4(c)(1) says that a prisoner timely files his notice of appeal by placing it in the prison mail system on or before the last day for filing. And Rule 4(d) says that the notice mistakenly filed in our court will be deemed filed in the district court on the date we received it. Under Rule 4(c)(1) alone, Christmas timely filed his notice by depositing it in the prison mail system on May 2. Yet under Rule 4(d) alone, Christmas's notice was *not* timely because we received it on May 5, three days after the deadline.

Over two decades ago, we faced *Bowie v. Cain*, a case with similar facts, and remanded to the district court to determine whether the prisoner

---

[9] *See Bailey*, 609 F.3d at 765–66.

[10] *See id.*

[11] *See* FED. R. APP. P. 4(a)(1)(A), 26(a)(1)(C).

4

had timely filed his notice of appeal.[12] The district court determined that he had, and we accordingly concluded that we had jurisdiction.[13] We later addressed the same question without remanding. We held in *Charles v. Cain*, an unpublished opinion, that the prison mailbox rule did not apply—and the prisoner's notice was thus untimely—because the prisoner addressed his notice to a state court of appeals, and it was received after the filing deadline.[14] That opinion did not address that our sister circuit had held otherwise.[15] And in the fourteen years since, *Charles* has been cited zero times. In fact, after *Charles*, a federal district court within our circuit reached the opposite conclusion.[16] Citing *Bowie* and the Tenth Circuit's *Larson v. Meek*, the district court held that "Rule 4(d) is properly read as, in essence, incorporating [Rule] 4(c)(1) . . . and that, as a result, even a misdirected notice of appeal is considered filed on the date on which it was deposited in the prison mailing system."[17]

We are persuaded that a prisoner who mistakenly addresses his notice to the court of appeals timely files his notice so long as he deposits it in the prison mail system by the deadline.[18]

---

[12] *Bowie v. Cain*, 33 F. App'x 705, 2002 WL 432675, at *1 & nn.7 & 8 (5th Cir. 2002).

[13] *Id.*

[14] *Charles v. Cain*, 384 F. App'x 388, 388–89 (5th Cir. 2010).

[15] *See Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007).

[16] *See Sheffield v. Davis*, No. 3:14-cv-322, 2017 U.S. Dist. LEXIS 107945, at *5 (S.D. Tex. July 10, 2017).

[17] *Id.* (citation omitted).

[18] *See, e.g.*, *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017); *United States v. Benally*, 242 F.3d 391, 2000 WL 1853973, at *1 (10th Cir. 2000) (unpublished); *Larson*, 240 F. App'x at 780; *Coleman v. Jones*, No. 2:11-cv-1345, 2015 U.S. Dist. LEXIS 94614, at *5–

No. 23-30151

To see why, first consider Rules 4(c) and (d) in their broader context. The operative moment for filing for non-prisoners—that is, the general filing rule—is the moment the district court receives the notice.[19] Because Rule 4(d)'s mistaken filing rule applies to all litigants, it is of no surprise that it parallels this general rule by referring to when the court of appeals receives notice.

But *pro se* prisoners are not subject to this general filing rule. For them, notice is deemed filed earlier in time—when "it is deposited in the institution's internal mail system."[20] That is because "only the *pro se* prisoner is forced to" send his notice through the mail.[21] Other litigants can choose whether to mail their notice and, if so, can take various precautions to ensure their notice is delivered.[22] *Pro se* prisoners cannot. They "have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally."[23] Because "the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the [district court] clerk," that delivery is the moment at which their notices of appeal are deemed filed.[24]

---

6 (N.D. Ala. June 4, 2015) (magistrate judge's recommendation and report, which the district court adopted); *see also* History and Purpose of Rule 4, 16A Fed. Prac. & Proc. Juris. § 3950 n.22 (5th ed.) (describing *Saxon* as a "sensible reading of Rule 4(c)(1) and Rule 4(d)").

[19] Fed. R. App. P. 4(a)(1), (b)(1); *Houston v. Lack*, 487 U.S. 266, 273 (1988).

[20] Fed. R. App. P. 4(c)(1).

[21] *Houston*, 487 U.S. at 271.

[22] *Id.*

[23] *Id.* at 273–74.

[24] *Id.* at 275.

Rule 4(d) applies when notice is mistakenly filed in the court of appeals, and it applies to prisoners *and* non-prisoners. When a non-prisoner mistakenly sends his notice of appeal to the court of appeals, Rule 4(d) in theory ensures that he suffers no penalty. Assuming mail takes the same amount of time to get to the district court and the court of appeals, that non-prisoner's notice will be deemed filed on the same day as if he had properly mailed his notice to the district court. For the rule to operate the same way for *pro se* prisoners, we must pay heed to Rule 4(c). Because Rule 4(c) sets the operative moment for filing for *prisoners* at the time the notice is *deposited* in the prison mail system, Rule 4(d)'s reference to the date notice "was received" by the court of appeals—a vestige of the general filing rule—does not control. While the date of receipt is relevant to non-prisoners, the date when the notice is deposited in the prison mail system is what is relevant for *pro se* prisoners.[25]

The only way to maintain parity between *pro se* prisoners who properly direct notice to the district court and those who do not—the exact parity enjoyed by non-prisoners—is to deem a misdirected notice filed in the district court when it is deposited in the prison mail system. Otherwise, *pro se* prisoners, but no other class of litigants, would face different filing timelines for misdirected notices, contrary to Rule 4(d)'s general command.

Second, general canons of interpretation support this reading of the rules. "The general/specific canon is perhaps most frequently applied to statutes in which a *general* permission or prohibition is contradicted by a *specific* prohibition or permission."[26] Here, the general rule is Rule 4(d),

---

[25] *See* Fed. R. App. P. 4(c)(1); *Houston*, 487 U.S. at 275.

[26] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (emphases added).

governing the mistakenly filed notice, and the specific rule is Rule 4(c), which only applies to *pro se* prisoners. As the Supreme Court has instructed, "[t]o eliminate the contradiction, the specific provision is construed as an exception to the general one."[27] So we construe Rule(c)'s *pro se* prisoner rule as an exception to the general application of Rule 4(d).

And third, take Rule 4(d)'s origin. As relevant here, Rule 4 was "extensively rewritten in 1998."[28] An amendment excerpted Rule 4(a)'s statement about mistaken civil filings of notices of appeal in the court of appeals—undisputedly a general rule—to create a new subdivision of Rule 4, now known as Rule 4(d).[29] Accordingly, Rule 4(d) is a vestige of the original 4(a)—from which Rule 4(c) and *pro se* prisoners were originally excepted.

Rule(c)'s exception is sound as a matter of logic, not just structure. Whether notice is properly addressed to the district court or mistakenly addressed to the court of appeals, *pro se* prisoners lose control of their notices when they deposit them and must face the same "vagaries of the mail."[30] Rule 4(c) reacts to this reality. Revoking its protections solely because a *pro se* prisoner incorrectly addressed an envelope—something non-prisoners are also apt to do—undermines its broader rationale.

Accordingly, we hold that a *pro se* prisoner who deposits his notice in the prison mail system before the deadline in accordance with Rule 4(c)(1) has timely filed, even if the notice is addressed to the court of appeals.

---

[27] *Id.*

[28] History and Purpose of Rule 4, 16A Fed. Prac. & Proc. Juris. § 3950 (5th ed.)

[29] *Id.*

[30] *Houston*, 487 U.S. at 271.

No. 23-30151

Because Christmas deposited his notice in the prison mail system on May 2, the last day to appeal, we deem his notice of appeal timely filed.

III

We now turn to the substance of Christmas's appeal: whether Christmas's petition for habeas relief in the district court was timely, and if not, whether he is entitled to equitable tolling. To do so, we recite the relevant facts. Because Louisiana has adopted the prison mailbox rule, already discussed at great length above, which considers a prisoner's appeal "filed" on the date the prisoner places the filing in the prison mail system,[31] we will recite the facts based on the dates Christmas sent via prison mail any *pro se* filings.[32]

Christmas's questions are more than a decade in the making. On April 14, 2011, a trial found Christmas guilty of one count of second-degree murder and two counts of attempted second-degree murder. The trial court denied Christmas's post-verdict motions for acquittal and a new trial on June 13, 2001, and sentenced Christmas to life imprisonment without probation, parole, or suspension of sentence for the count of second-degree murder, with fifty years of hard labor for each count of attempted second-degree murder to be served concurrently.

Christmas appealed his conviction on December 12, 2011, asserting various errors, but on June 8, 2012, the state appellate court affirmed

_____

[31] *See Causey v. Cain*, 450 F.3d 601, 604–05 (5th Cir. 2006) (collecting cases).

[32] Hooper's recitation of the facts and analysis of Christmas's timeliness uses the date on which the courts received Christmas's filings. This is incorrect based on Louisiana and federal law. *See id.*; *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); 28 U.S.C. § 2254, R. Governing Section 2254 Cases in the U.S. Dist. Cts. 3(d).

No. 23-30151

Christmas's conviction and sentences.[33] On July 3, 2012, Christmas then sent, via prison mail, a petition to the Louisiana Supreme Court, which summarily denied certiorari on January 25, 2013.[34] Because Christmas did not file a petition for certiorari with the United States Supreme Court, his conviction became final on April 25, 2013.

Christmas then applied for post-conviction relief via prison mail on December 10, 2013, asserting claims of collusion and improper admission of expert testimony. On May 21, 2015, the trial court denied Christmas's application in its entirety. On June 19, 2015, Christmas sent via prison mail a notice of intent to seek supervisory writs, which the appellate court denied on September 8, 2015, based on Christmas's failure to include required documents. Christmas refiled the writ, which the court denied on January 14, 2016.[35] On February 12, 2016, Christmas filed his writ application with the Louisiana Supreme Court, which denied the application on August 4, 2017.

Christmas states he made his first status check on the pending supervisory writ with the Louisiana Supreme Court on March 14, 2017, during which he was informed that "[t]he court will notify you when it has reached a decision in this matter." On June 7, 2018, more than one year later, Christmas sent another letter to the Louisiana Supreme Court requesting the status of his pending supervisory writ. Christmas suggests he first received notice of the Louisiana Supreme Court's judgment on approximately June 13, 2018, due to, according to the Louisiana Supreme Court clerk, a "delay

---

[33] *State v. Christmas*, 2011-2047, 2012 WL 2061506, (La. App. 1 Cir. Jun. 8, 2012).

[34] *State v. Christmas*, 105 So. 3d 64, 2012-1551, 2013 WL 406002 (La. Jan. 25, 2013) (unpublished).

[35] *State v. Christmas*, 2015-0988 (La. App. 1st Cir. Sept. 8, 2015) (unpublished); *State v. Christmas*, 2015-1733 (La. App. 1st Cir. Jan. 14, 2016) (unpublished).

in sending . . . court actions and acknowledgement letters . . . [d]ue to a change in staff . . . since August 25, 2017."

Christmas then sent a petition for habeas corpus via prison mail to the United States District Court for the Middle District of Louisiana on July 10, 2018, nearly one year after the Louisiana Supreme Court denied the writ. The district court denied the habeas petition on March 31, 2022. Christmas now appeals that denial.

We review *de novo* the district court's denial of Christmas's habeas application on procedural grounds.[36]

## IV

Hooper is correct that Christmas's habeas petition is untimely.

Under 28 U.S.C. § 2244(d), a prisoner in custody due to a state judgment has a one-year period during which he or she may file an application for a writ of habeas corpus in a federal district court.[37] The clock starts ticking on the day after final judgment is rendered.[38] And for purposes of § 2244(d), judgment becomes final at the conclusion of direct review or the expiration of the time for seeking such review—generally, ninety days after the state court of last resort (here, the Louisiana Supreme Court) entered its judgment.[39]

---

[36] *Melancon v. Kaylo*, 259 F.3d 401, 404 (5th Cir. 2001).

[37] *Id.*

[38] 28 U.S.C. § 2244(d)(1)(A); Fed. R. Civ. P. 6(a)(1)(A).

[39] *See Causey*, 450 F.3d at 606 ("[A] conviction becomes final at the conclusion of direct review or when the time for such review has expired, as specified by AEDPA, regardless of when state law says finality occurs."); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

No. 23-30151

But the clock pauses when a properly filed application for state post-conviction or other collateral review is pending.[40] An application is "pending" while it is before a state court for review and during the time authorized to file a timely application for further review by the next level of the state court.[41]

Here, Christmas's conviction became final on April 25, 2013. He filed a petition for state habeas review on December 10, 2013, before which the relevant one-year limitations period ran for 228 days. Christmas's federal habeas limitations period was then tolled throughout his successive—and timely—state appeals, until August 4, 2017, when the Louisiana Supreme Court denied certiorari. The federal habeas clock began running again, for another 339 days, before Christmas filed his petition in the federal district court on July 10, 2018. In sum, 567 days passed between Christmas's final judgment and his petition for federal habeas relief, far more than the one year permitted under § 2244(d).[42]

V

In an effort to save his claims, Christmas requests equitable tolling for "the period between the denial of his s[t]ate application for post-conviction relief and his notification of this denial that he received about ten (10) and a half months later" due to the court's failure to notify him and because "there

_____

[40] 28 U.S.C. § 2244(d)(2).

[41] *See Melancon*, 259 F.3d at 406.

[42] The district court found 566 days had passed. We have not included the date triggering the statute of limitations (for example, the date of final judgment) or the date on which Christmas "filed" (sent via prison mail) his pleadings. But regardless, either calculation far surpasses the one-year limit. *See* Fed. R. Civ. P. 6(a)(1)(C).

is a legitimate excuse for failing to raise a claim at the appropriate time." But both arguments fail. We address each in turn.

A

First, Christmas argues that he "diligently pursued his rights despite external factors beyond his control" and "made every attempt to obtain notice of the Louisiana Supreme Court judgment to timely file his Federal Writ of Habeas Corpus." We review a district court's decision to deny equitable tolling for abuse of discretion.[43]

Generally, a petitioner is entitled to statutory tolling if he was "prevented from filing" his habeas application due to an "impediment . . . created by State action in violation of the Constitution or laws of the United States."[44] But a state court's failure to provide notice of its rulings on requests for relief from state convictions generally implicates *equitable* tolling.[45]

As Christmas recognizes, equitable tolling is discretionary.[46] Indeed, "[a] petitioner seeking equitable tolling must demonstrate that he pursued the [habeas corpus relief] process with diligence and alacrity both before and after receiving notification that his state petition was denied."[47] As a lower court in our circuit stated, "the promptness and frequency of inquiry into the

---

[43] *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009).

[44] 28 U.S.C. § 2244(d)(l)(B); *see Clarke v. Rader*, 721 F.3d 339, 342 (5th Cir. 2013).

[45] *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000); *Critchley v. Thaler*, 586 F.3d 318, 321 n.3 (5th Cir. 2009) (citing *Hardy*, 577 F.3d 596).

[46] *See Diggs v. Vannoy*, 840 F. App'x 779, 781 (5th Cir. 2021) ("Equitable tolling is 'discretionary,' 'does not lend itself to bright-line rules,' and 'turns on the facts and circumstances of a particular case.'" (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999))).

[47] *Diggs*, 840 F. App'x. at 781 (internal quotation marks and citations omitted).

status of a petitioner's case provides guidance regarding when tolling may be warranted."[48]

Christmas did not demonstrate sufficient diligence for us to find the district court abused its discretion in denying equitable tolling. Christmas waited nearly eight months to file his state habeas petition after his conviction became final,[49] and then, despite twenty-eight months between the time he filed his writ with the Louisiana Supreme Court and received notice of that court's judgment, Christmas waited twenty-six days after that judgment to file his federal habeas petition. Furthermore, he made only two status checks on his state habeas petition at the Louisiana Supreme Court: the first, thirteen months after filing, and the second, another fifteen months later.

Although "some extraordinary circumstance stood in his way and prevented timely filing,"[50] Christmas had measures he could take—and did take, though only twice—to ensure he acted diligently and received notice in time to meet his federal habeas deadline. Christmas's delay prevents him from seeking federal habeas relief now.

B

Second, Christmas purports to show cause for his untimeliness, suggesting certain facts related to "the underrepresenta[t]ion of minorities

---

[48] *Brown v. Vannoy*, No. CV 17-314-JWD-EWD, 2021 WL 4074793, at *4 (M.D. La. Aug. 6, 2021), *report and recommendation adopted*, No. CV 17-314-JWD-EWD, 2021 WL 4066989 (M.D. La. Sept. 7, 2021).

[49] *See Stroman v. Thaler*, 603 F.3d 299, 302-303 (5th Cir. 2010) (finding petitioner failed to act with reasonable diligence when he waited nearly seven months to file state habeas petition).

[50] *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (recognizing petitioner did not receive notice that his state habeas petition was denied for eighteen months) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

in pools of jury" through the "jury-fixing system in Iberville Parish" and violations of the National Voters Registration Act of 1993 "were not made available to him." But Christmas skipped a step. He has failed to show that all his claims were exhausted in state court. Furthermore, the "cause" he suggests is undercut by his own prior filings for relief.

Section 2254(b)(1) of AEDPA requires that a petitioner exhaust state court remedies before we review any federal habeas claims to allow state courts "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights,"[51] and to "protect[] against 'the significant harm to the States that results from the failure of federal courts to respect' state procedural rules."[52] And a petitioner's claims cannot be in procedural default, either; "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."[53] However, "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[54]

But Christmas jumped ahead when he purported to show cause for a slew of claims he does not fully recite on appeal. He has failed to first show that the claims he now raises have been exhausted in state court. Furthermore, Christmas has failed to show cause for his default or resulting prejudice. Indeed, when Christmas filed for collateral state review, he alleged collusion between the prosecutor and public defender in not challenging the

---

[51] *Shinn v. Ramirez*, 596 U.S. 366, 367 (2022) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)).

[52] *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[53] *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

[54] *Id.* at 10.

selection of grand jurors for violations of the National Voters Registration Act of 1993, as well as ineffective assistance of counsel. Such filings show Christmas had sufficient awareness to challenge related issues—such as "jury-fixing . . . in Iberville Parish," "a violation of the National Voters Right Act of 1993," and "systematic inef[f]ective assistance of counsel"—before the state court prior to seeking federal habeas relief.[55]

And even if a few claims were exhausted—as Hooper concedes—or even if Christmas *did* show cause for his default and prejudice—which would permit our review—Christmas has failed to meet the high bar of 28 U.S.C. § 2254(d). That statute grants federal habeas relief if the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56] Christmas has not presented any evidence or argument suggesting that the state courts violated clearly established federal law or made a decision based on an unreasonable determination of the facts. Without such a showing, Christmas is not entitled to federal habeas relief.

_____

[55] *See Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) ("Examples of external impediments include active governmental interference or the *reasonable unavailability* of the factual or legal basis for the claim." (emphasis added) (internal quotation marks and citations omitted)); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) (requiring "a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *Rodriguez v. Johnson*, 104 F.3d 694, 699 (5th Cir. 1997) (finding cause only when a claim "was so novel that it lacked a reasonable basis in existing law that the failure to assert the claim in an earlier petition is excused for cause" (internal quotation marks and citation omitted)).

[56] 28 U.S.C. § 2254(d)(1)–(2).

No. 23-30151

## VI

In sum, Christmas's letter suffices as a notice of appeal, and we consider his letter, mistakenly directed to our court, timely filed under Rule 4(c)'s prison mailbox rule. However, Christmas's significant delay in seeking federal habeas relief—far past the one year permitted by AEDPA—precludes him from obtaining that relief now.

Accordingly, we AFFIRM the district court's denial of habeas relief due to Christmas's untimeliness.